*123
 
 Hart, J.
 

 The question in this ease is whether sales to Kroger of wrapping and packing materials, cartons- and containers used by it in wrapping, packing or crating tangible personal property for conservation,, preparation for shipment and shipment to its stores and there ultimately sold by it in retail sales in an, established business are subject to a sales or use tax assessable against Kroger. The determination of this question must depend upon the effect to be given to a proper application of the sales and use tax laws to the use and disposition made of such wrapping and packing materials, cartons and containers so purchased by Kroger and used in its business.
 

 Section 5546-2, General Code, imposes a tax “on each retail sale made in this state,” and Section 5546-1, General Code, defines “retail sale” as follows:
 

 “ ‘Eetail sale’ and ‘sales at retail’ include all sales excepting those in which the purpose of the consumer is (a) to resell the thing transferred in the form in which the same is, or is to be, received by him; or (b) to incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing or refining * *
 

 Section 5546-26, General Code, provides that “an excise tax is hereby levied on the storage, use, or other consumption” of tangible personal property, and Section 5546-25, General Code, defines “storage” and “use” as follows:
 

 “ ‘Storage’ means and includes any keeping or retention in this state for use or other consumption in this state for any purpose, excepting as hereinafter provided.
 

 “ ‘Use’ means and includes the exercise of any right or power incidental to the ownership of the thing used, excepting as hereinafter provided.
 

 “When the purpose of the consumer is * * * to use
 
 *124
 
 •or consume the thing transferred directly in the pro•duction of tangible personal property for sale by manufacturing, processing, * * * or directly in making retail sales * * *; the attainment of such a purpose shall not be considered to be a ‘storage,’ a ‘use,’ or •a ‘consumption’ of the thing purchased, within the meaning of this act.”
 

 Since the statutory exceptions for “use,” “storage” •and “consumption” taxes are the same as the statutory exceptions from “retail sale” taxes, counsel for the parties have, throughout this appeal and for the •sake of brevity, referred to the problems involved •as relating only to “retail sale,” and the writer of this opinion will follow the same procedure.
 

 Sections 1464-3, 5546-5 and 5546-31, General Code, authorize and direct the Tax Commissioner to adopt for the administration of the Sales Tax Act such rules and regulations as he may deem necessary to carry out the provisions of the act. Such rules and regulations are necessary because of the infinite detail essential in the consideration of an application and the interpretation of the law to concrete and specific circumstances and situations, the incorporation of which in the statute itself would be impracticable or impossible.
 

 Section 1464-3, General Code, provides in part:
 

 “All other powers, duties and functions of the Department of -Taxation, other than those mentioned in Sections 1464-1 and 1464-2 of the General Code, are hereby vested in and assigned to, and shall be performed by the Tax Commissioner, which powers, duties and functions shall include, but shall not be limited to the following powers, duties and functions: * * *
 

 “13. To adopt, and to promulgate in the manner provided by this act, all rules of the Department of Taxation other than the rules which the Board of Tax Appeals is by Section 1464-1 of the General Code,
 
 *125
 
 authorized and requited to adopt and promulgate
 

 Section 5546-5, General Code, provides in part:
 

 “The Tax Commissioner shall enforce and administer the provisions of this act [Sales Tax Act] * * *. The Tax Commissioner shall have power to adopt and promulgate in accordance with the provisions of the Administrative Procedure Act, such rules and regulations as he may deem necessary to carry out the provisions of this act * *
 

 Section 5546-31, General Code, provides in part:
 

 “The commission shall enforce and administer the provisions of this act [Use Tax Act] * * *. It shall have power to adopt and promulgate such rules and regulations as it may deem necessary to carry out the provisions of this act * * *.”
 

 The Tax Commissioner, pursuant to the authority given him by the sections of the General Code immediately above quoted, adopted Rule 100 which was in force and operation when the sales involved in this case and assessed by the Tax Commissioner were made to Kroger, which rule Kroger claims is applicable to and decisive of the questions involved in this appeal. Rule 100, promulgated by the Tax Commissioner, reads as follows:
 

 “Sales of packing or wrapping materials and containers to be used in packing, wrapping or crating tangible personal property which is sold in an established business, are not taxable. Such packing or wrapping materials include crating materials used in packing tangible personal property for shipment.”
 

 This rule, like those of other administrative agencies, issued pursuant to statutory authority, has the force and effect of law unless it is unreasonable or is in clear conflict with statutory enactment governing the same subject matter.
 
 State, ex rel. Kildow,
 
 v.
 
 Industrial Commission,
 
 128 Ohio St., 573, 580, 192 N. E.,
 
 *126
 
 873;
 
 Zangerle, Aud.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 563, 572
 
 et seq.,
 
 41 N. E. (2d), 369;
 
 Helvering, Commr.,
 
 v.
 
 Winmill,
 
 305 U. S., 79, 83, 83 L. Ed., 52, 59 S. Ct., 45;
 
 Standard Oil Co. of California
 
 v.
 
 Johnson, Treas.,
 
 316 U. S., 481, 484, 86 L. Ed., 1611, 62 S. Ct., 1168;
 
 Helvering, Commr.,
 
 v.
 
 R. J. Reynolds Tobacco Co.,
 
 306 U. S., 110, 83 L. Ed., 536, 59 S. Ct., 423;
 
 Neil House Hotel Co.
 
 v.
 
 City of Columbus,
 
 144 Ohio St., 248, 252, 58 N. E. (2d), 665. And unless the rule is unreasonable or contrary to law, the Tax Commissioner must apply it as formulated, until it is amended or repealed in the manner provided in Section 1464-4, General Code.
 

 Section 5623, General Code, provides:
 

 “The Tax Commission of Ohio shall decide all questions that may arise with reference to the construction of any statute affecting’ the assessment, levy or collection of taxes, in accordance with the advice and opinion of the attorney general. Such opinion and the rules, regulations, orders, and instructions of the commission [Tax Commissioner] prescribed and issued in conformity therewith shall be binding upon all officers, who shall observe su<?h rules and regulations and obey such orders and instructions unless and until the same are reversed, annulled or modified by a court of competent jurisdiction. ’ ’
 

 The continuity of rules of the Department of Taxation is necessary in order that a taxpayer may be advised as to the state of the law at the time a tax assessment may be made against him. See
 
 Matz, Admr.,
 
 v.
 
 J. L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 278, 279, 7 N. E. (2d), 220;
 
 Coady
 
 v.
 
 Leonard et al., Board of Liquor Control,
 
 132 Ohio St., 329, 7 N. E. (2d), 649;
 
 A. L. A. Schechter Poultry Corp.
 
 v.
 
 United States,
 
 295 U. S., 495, 79 L. Ed., 1570, 55 S. Ct., 837, 97 A. L. R., 947.
 

 Counsel for the Tax Commissioner, however, contend that Buie 100 should be interpreted to apply only
 
 *127
 
 to wrapping materials, cartons and containers directly used in the sale of the property contained in them and delivered with them to the ultimate consumer in a retail sale; and that, if such interpretation is not given to the rule, it is in conflict with the statute, is beyond the power of the Tax Commissioner to adopt, and hence does not exclude the sale of the property in question to Kroger from a tax assessment.
 

 The language of the rule in question is broad and ■unambiguous and may well be interpreted to cover and containers whether sold with the article subject to all sales of packing and wrapping materials, cartons a retail sale or used in the preparation and shipment of property so sold at retail. Such an interpretation should also be given it as would avoid any discrimination against Kroger as between it and an independent manufacturer of merchandise for sale to whom cartons and wrapping materials are likewise sold. Kroger claims that, under the resale theory of the Tax Commissioner, a tax could be levied against Kroger when it purchases such wrapping materials and containers because it does not resell them to any one; but that no tax is assessable against an independent manufacturer of merchandise when he purchases such wrapping materials and containers for the distribution of his merchandise because he purchases them to resell with his merchandise to an independent retailer. Kroger offered to introduce evidence before the Board of Tax Appeals to show such discrimination in the assessing of the tax against it, but the board excluded such evidence.
 

 The court is inclined to the view that Rule 100 is a reasonable and valid rule, and that it excludes from the sales tax the purchase by Kroger of the wrapping materials, cartons and containers in question.
 

 Kroger claims further that, if Rule 100 does not relieve it from a sales tax resulting from the purchase of the wrapping materials and containers in question,
 
 *128
 
 Sections 5546-1, 5546-2, 5546-25 and 5546-26, General Code, properly interpreted, do so. It is conceded that, under the provisions of these statutes, no sales tas is assessable against the purchaser in any one of four types of sales of tangible personal property. Such-types are (a) purchases of tangible personal property for the purpose of resale; (b) purchases of such property which is incorporated into a processed or manufactured product and sold with the product to the ultimate consumer; (c) purchases of tangible personal property used and consumed directly in the completion of the production of other tangible personal property for sale, and so used and consumed before transportation to the place of sale begins; and (d) purchases of tangible personal property, such as containers, which go to the ultimate consumer of a product sold in such containers. Kroger claims that the purchase of the wrappings and containers, used by it in .the production of its merchandise, is not taxable because the sale falls within the type of sale described in division (c) above. In other words, Kroger claims that its wrapping materials and containers are necessarily and directly used and consumed before* ultimate transportation to its retail stores is begun. Kroger claims that these wrappings and containers are necessarily and indispensably used and consumed in conserving and handling the product contained in them and in making the shipment and transportation thereof possible.
 

 The record discloses that the purchases in question were of small cartons used for cookies, crackers and bread; larger cartons in which the smaller items are-packed for shipment; gummed tape; bread-tray dividers used as liners; corrugated paper sheets used as dividers or as reinforcements of cartons; newsprint used for filling material; fiber breadboxes; steel containers used in tying wire around shipping containers; layer board; wire-tying equipment; stitching wire;
 
 *129
 
 poultry'boxes for packing fresh and frozen poultry; barrels used for packing candy, jelly, powdered milk and bulk spices; candy shipping cartons; milk shipping cans used either in inner plant handling or sold to milk producers; meat shipping cartons; drink-ade cartons containing dry powder to make soft drinks; beverage cartons; mats for candy boxes; frozen-egg cartons; coffee shippers, consisting of corrugated cartons into which one or three pound bags of coffee are packed; loin boxes, wooden boxes or crates used for packing full pork loins; lard boxes consisting of fiber cartons used not only as shipping cartons but as molds in production; slack barrels used to handle and prepare for shipment bulk quantities of fresh meats or semieured meats; wire bound wood boxes used same as loin boxes; and beef covers made from cotton mesh to keep clean large cuts of beef during shipment and otherwise.
 

 It was the evident intention of the General Assembly, in excepting sales of types of property used and consumed in the process of creating other tangible personal property for ultimate sale, to encourage the manufacture and production of more valuable personal property upon the sale- of which a greater amount of tax could be collected from the consumer because of the enhanced value of the ultimate product. The purpose of excepting intermediate sales of integral items making up the final product is to avoid double taxation and to prevent the increase of ultimate sales price to the consumer, for, after all, the consumer pays the whole tax reflected in the price which he pays for the finished product. Here we are dealing with a claimed exception in a definition of “retail sale,” not with an exemption from a tax of general application, and, therefore, the statute must be given a liberal construction in favor of the taxpayer.
 
 City of Cincinnati
 
 v.
 
 Connor,
 
 55 Ohio St., 82, 91, 44 N. E., 582; 2 Cooley on Taxation, 1113, Section 503.
 

 
 *130
 
 It was also the evident intention of the General Assembly that the statutes here involved be liberally construed in favor of the intermediate purchaser of items of tangible personal property which are used to make the ultimate property sold more valuable. This is indicated by certain recent amendments which the General Assembly has made in the taxing statutes in question, to the end that such intermediate purchasers be relieved of the tax. The original definition of “retail sale” and the exceptions from such definition were adopted by the General Assembly on December 6, 1934 (115 Ohio Laws, pt. 2, 306). On March 25, 1935 (116 Ohio Laws, 41), the General Assembly repealed the exception originally limited to sales of “feed, seeds, lime or fertilizer,” and broadened the exception by providing that “farmers and horticulturists shall be considered manufacturers or processors in the interpretation of this act.” On May 15, 1935 (116 Ohio Laws, 248), the General Assembly added to the exceptions the sale of tangible personal property used in mining. Questions immediately arose as' to what was comprehended in the term “mining,” whereupon the General Assembly on May 8, 1941 (119 Ohio Laws, 389), clarified and liberalized this exception by including in the statute the words, “mining including without limitation the extraction from the earth of all substances which are classed geologically as minerals.” Following that amendment, this court in the case of
 
 Bailey
 
 v.
 
 Evatt, Tax Commr.,
 
 142 Ohio St., 616, 53 N. E. (2d), 812, held that “the production for commercial sale of sand and gravel from natural sand and gravel deposits by stripping the surface soil therefrom with a drag line and removing such sand and gravel from pits with a steam shovel constitutes ‘mining’ * *
 

 In 1942, 1943 and 1944, assessments were made against certain laundry and linen supply companies
 
 *131
 
 on the purchase of material used by them in producing “linen service” to customers. Those assessments were affirmed by the Board of Tax Appeals between May 2 and June 4, 1945, on the ground that such materials were not used in “industrial cleaning” excepted by the statute. Appeals were taken to this court, but while the appeals were pending and before this court, on February 13, 1946, decided the case of
 
 Pioneer Linen Supply Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 146 Ohio St., 248, 65 N. E. (2d), 711, to the effect that laundry service or supply service was not within the term “industrial cleaning,” the General Assembly under date of June 13,1945 (121 Ohio Laws, 247), broadened the exception by adding the words “or to usé or consume the thing directly in the rendition of towel and linen service or supply * * *.”
 

 In 1944, an assessment was made against the Huron Fish Company on the purchase of certain fish nets used for commercial fishing as being a retail sale and not a sale of tangible personal property used and consumed in the production of other tangible personal property for sale. While an appeal from that assessment was pending before the Board of Tax Appeals and before an appeal was taken to this court in the case of
 
 Huron Fish Co.
 
 v.
 
 Glander, Tax Commr.,
 
 146 Ohio St., 631, 67 N. E. (2d), 546, the General Assembly on June 13, 1945 (121 Ohio Laws, 247), added to the statute a new exception in the words “or (f) to use or consume the thing directly in commercial fishing.” Finally, on June 9, 1947, the “mining” exception was extended or clarified by adding (122 Ohio Laws, ) the following: “and services in the exploration for and production of crude oil and natural gas.”
 

 A study of the record in the instant case indicates that the items of personal property, which were the subject of purchase by Kroger and the purchase of which was assessed for taxes by the Tax Commission
 
 *132
 
 er, were used and consumed in connection with the processing and manufacture of Kroger’s goods ultimately sold to the consumer or in protecting and conserving such property and making it ready and possible for transportation to Kroger’s retail stores. Transportation itself is not involved in this record. In some instances the items were used over again in repeated processes which does not alter the situation, but other items were required to be used to make the product ready for the market and were gone forever. The products manufactured and produced by Kroger could not be placed in a market for sale without the use of the materials purchased by it and used in making such products ready for the market. The wrapping, pacldng and crating of these goods were distinctly a part of the processing and manufacturing operation. They were not a part of any transportation service. The facts and question involved in this case are akin to those considered in the case of
 
 Bailey
 
 v.
 
 Evatt, Tax Commr., supra,
 
 and
 
 Dye Coal Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 144 Ohio St., 233, 58 N. E. (2d), 653. They are distinguishable from the facts and questions involved in the case of
 
 Saunders Mills, Inc.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 227, 39 N. E. (2d), 526, where the purchase and use were of trucks used in transporting alfalfa hay from farms to dehydrating plants, which transportation interpolated two independent operations. The hay was a completed product in saleable condition at the farm, while the alfalfa meal became a completed product for sale at the dehydrating plant.
 

 The decision of the Board of Tas Appeals is reversed in part.
 

 Decision reversed in part.
 

 Weygandt, C. J., Turner, Matthias, Zimmerman, Sohngen and Stewart, JJ., concur.