Matthias, J.
Two questions are raised by these appeals, both arising from the same physical use of the lumber the sale or use of which the taxpayer claims is excepted from the provisions of the Sales and Use Tax Acts.
Case No. 36272 raises the question as to whether the sale or use of blocking lumber used by the taxpayer in the transportation of its finished product to the consumer is excepted from the operation of the sales and use tax laws.
Case No. 36273 raises the question as to whether the sale or use of blocking lumber used by the taxpayer in the transporta *560 tion of its unfinished products from one of its factories to another where an entirely new processing operation commences is excepted from the operation of the sales and use tax laws.
As the provisions of the Sales and Use Tax Acts relating to the matter presently before us are similar, we will quote only the pertinent provisions of the Sales Tax Act.
Such provisions are as follows:
Section 5739.01, Revised Code. “As used in Sections 5739.01 to 5739.31, inclusive, of the Revised Code:
í Í * # #
“(B) ‘Sale’ and ‘selling’ include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is granted, for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever * * #.
Í £ # * #
“(E) ‘Retail sale’ and ‘sales at retail’ include all sales except those in which the purpose of the consumer is :
“ (1) To resell the thing transferred in the form in which the same is, or is to be, received by him;
“ (2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing * * #.
“(H) ‘Price’ means the aggregate value in money of any thing paid or delivered, or promised to be paid or delivered, by a consumer to a vendor in the complete performance of a retail sale, without any deduction on account of the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid, or allowed after the sale is consummated, or any other expense * #
Section 5739.02, Revised Code. “* * * an excise tax is hereby levied on each retail sale made in this state of tangible personal property.”
The taxpayer makes two basic contentions relative to the use of the lumber in sales to the ultimate consumers.
*561 The first of these is actually based on two grounds. One, that such lumber is purchased for resale to the customer, and, two, that, since the taxpayer’s contracts provide for delivery f. o. b. point of origin or at destination, such lumber is essential to the completion of its contracts.
We shall first turn our attention to the proposition that such lumber is purchased for resale to the consumer.
There is no question that such lumber passes into the possession and control of the consumer, to» do with as he sees fit. Such fact is stipulated by the parties. There is a transfer of possession. However, transfers of possession do not necessarily constitute sales. The first paragraph of the syllabus of Kloepfer’s, Inc., v. Peck, Tax Commr., 158 Ohio St., 577, 110 N. E. (2d), 560, reads as follows:
“A transfer of possession of property does not constitute a sale within the meaning of the Sales Tax Act unless such transfer is for a consideration. ’ ’
The taxpayer urges that there is consideration on the basis that the consideration for a contract extends to all elements of the contract and supports all the obligations of the seller in a contract of sale.
However, the furnishing of lumber to the consumer is not a part of the obligations of the taxpayer. The taxpayer is a producer of steel and steel products. The contracts entered into with its consumers are for the purchase of steel. There certainly is no intent on the part of the consumer to purchase lumber. Clearly, if another method of shoring up shipments were adopted, the purchaser could not demand that the taxpayer'also furnish the lumber. The lumber comes into the possession of the purchaser as a mere incident to the shipment. The stipulations of the parties themselves show that such lumber is used to comply with the regulations of the carrier and not to fulfill the obligations of what is to pass under the contract. Stipulation No. 11 reads as follows:
“Lumber is placed in railroad cars in the manner shown in paragraph 10 above and the mutual exhibits referred to therein, to prevent damage to the load, to comply with requirements published by the Association of American Railroads and adopted by the carrier, and, in the event the car is loaded for ship *562 ment to a customer, in accordance with any additional requirements of the customer. All trucks are loaded in said manner to prevent damage to the load, to comply with the requirements of the carrier, and, in the event the truck is loaded for shipment to a customer, in accordance with any additional requirements of the customer. All railroad cars and trucks are loaded by appellant and are inspected and accepted by the carrier before they are moved by the carrier. ’ ’
Clearly such lumber is purchased and used by the taxpayer to comply with the shipping regulations of the carrier and not for resale to its customers. It passes into the hands of the consumer actually by way of an abandonment by the taxpayer.
The second branch of the taxpayer’s argument in relation to its sales is that such lumber is essential to the fulfillment of its contracts of sale and thus its sale or use is excepted.
This is a complete misconstruction of the Sales and Use Tax Acts. That part of such acts upon which taxpayer must rely does not except from its operation the sale or use of all items which form a part of the elements necessary to the completion of the contract of sale but only such as are incorporated in the item transferred or used or consumed directly in its production.
Once again we must revert to the fact that the taxpayer manufactures and sells steel. Only if such lumber is essential to the manufacture or processing and is either incorporated in the finished product or used or consumed in producing such product, is its sale or use excepted.' The fact that it may be essential to the completion of the sale does not in and of itself except its sale or use. In Youngstown Building Material & Fuel Co. v. Bowers, Tax Commr., 167 Ohio St., 363, 149 N. E. (2d), 1, the syllabus states:
“In determining whether tangible personal property is used or consumed directly in the production of tangible personal property for sale by manufacturing or processing, and, therefore, whether its sale or use is excepted from taxation under the provisions of subdivision (E) (2) of Section 5739.01, or subdivision (C) (2) of Section 5741.01, Revised Code, the test is not whether such property is essential to the operation of an ‘integrated plant,’ the test to be applied being, when does the actual manufacturing or processing activity begin and end, and is the *563 property used or consumed during and in the manufacturing or processing period.”
The products in the instant case are steel or steel products. The processing or manufacturing is completed before such lumber is used. It serves no functional purpose in the processing but comes into use only after such processing is completed and as an incident to the transportation of the product to the consumer.
Therefore, the sale or use of such lumber is not excepted either on the basis that it is purchased for resale or that it is a necessary element in the production of the steel.
Secondly, taxpayer claims that even if such sale or use is not excepted on the first grounds it is excepted under the rule of Kroger Grocery & Baking Co. v. Glander, Tax Commr., 149 Ohio St., 120, 77 N. E. (2d), 921, the second paragraph of the syllabus of which reads as follows:
“Sales of wrapping materials, cartons and containers properly and necessarily used and consumed in producing, processing, manufacturing and preparing in suitable condition for market and sale food products to be sold at retail are within the exceptions in the Sales Tax Act and the Use Tax Act and are not taxable.”
Here we are faced with a problem different from that presented in the Kroger case. The lumber used in the present case is not wrapping materials, etc., necessarily used and consumed in producing, processing, manufacturing and preparing in suitable condition for market and sale. The steel is ready for the market in the instant case before the lumber is used. It is not wrapping, etc., but shoring placed on the carrier to comply with the carrier’s regulations relating to the transportation of products such as those of the taxpayer.
Even though such shoring is mandatory under the regulations of the carrier, and thus essential in making the deliveries to the consumer, such fact does not except the sale or use of the lumber from the operation of the Sales or Use Tax Acts.
There are many things essential to the operation of an industry whose sale or purchase is not excepted from the tax because they are not used or consumed in the manufacturing process, and the fact that such things are required by law or, *564 as in this case, by the regulation of a carrier does not except their sale or use from the tax unless it can also be found that they are used or consumed directly in the manufacturing or processing.
In Fyr-Fyter Co. v. Glander, Tax Commr., 150 Ohio St., 118, 80 N. E. (2d), 776, it was held:
“The fact that certain items of tangible personal property are required by law in mines or mining operations does not in and of itself exempt or except from taxation the sale or use of such items for such purpose.”
It must be concluded, therefore, that the sale or use of lumber used by a steel company for blocking purposes in the transportation of its products to the consumer is not excepted from the operation of the Sales or Use Tax Acts.
The decision of the Board of Tax Appeals is neither unreasonable nor unlawful in case No. 36272 and must be affirmed.
"We come now to a consideration of the question raised in case No. 36273, whether the sale or use of blocking lumber used by the taxpayer in the transportation of its product from one plant to another for an entirely new processing operation is excepted from the sales and use tax laws.
The Board of Tax Appeals determined that such blocking lumber is equipment used solely to transport partially processed steel from one plant to another for further processing, and, as such, its sale or use is excepted from the operation of the tax, basing its determination on the cases of Mead Corp. v. Glander, Tax Commr., 153 Ohio St., 539, 93 N. E. (2d), 19; Powhatan Mining Co. v. Peck, Tax Commr., 160 Ohio St., 389, 116 N. E. (2d)( 426; American Compressed Steel Corp. v. Peck, Tax Commr., 160 Ohio St., 207, 115 N. E. (2d), 153; France Co. v. Evatt, Tax Commr., 143 Ohio St., 455, 55 N. E. (2d), 652; Dye Coal Co. v. Evatt, Tax Commr., 144 Ohio St., 233, 58 N. E. (2d), 653; Youngstown Bldg. Material & Fuel Co. v. Bowers, supra (167 Ohio St., 363). However, in all those cases the transportation devices were used for all practical purposes within the confines of what constituted a single plant.
In addition to those cases relied upon by the Board of Tax Appeals, appellee urges that the case of Kroger Grocery & Baking Co. v. Glander, supra (149 Ohio St., 120), is applicable to this case.
*565 Paragraph two of the syllabus of that ease reads as'follows:
‘ ‘ Sales of wrapping materials, cartons and containers properly and necessarily used and consumed in producing, processing, manufacturing and preparing in suitable condition for market and sale food products to be sold a.t retail are within the exceptions in the Sales Tax Act and the Use Tax Act and are not taxable.”
However, that paragraph of the syllabus must be read in the light of the facts of such case, and an examination thereof does not disclose that any of the claimed excepted sales or uses were of materials used as transportation equipment between separate and distinct plants.
While it is true that this court has construed the word, “use,” in the acts to include transportation equipment used to convey raw material from one part of a plant to another after the processing has begun and until the time it is completed, it has further construed such word as not including equipment used either prior to or after completion of processing, even though such devices are essential to the operation of the plant and are used on the plant premises.
Our previous cases have determined questions relating primarily to transportation within the confines of a single plant. In those cases there was a continuity of processing, a transportation of raw material or material partly processed from one part of a plant to another.
In the present case, the taxpayer maintains and operates several separate plants in different geographic locations throughout Ohio. Each plant performs entirely different functions in the processing of the various steel products of the taxpayer, and each process is begun and completed in a separate plant before the products leave such plant for the next processing.
Is transportation equipment used to transfer steel products from one plant where processing has been completed do another plant where a new processing begins, which results in entirely different steel products, “used” within the meaning of the sales and use tax laws so as to except its sale or use from taxation?
We do not think so. Each of taxpayer’s plants engages apparently in different steel processing operations. When a *566 product leaves a plant, processing has been completed so far as that plant is concerned. When it reaches the next plant an entirely new processing operation commences resulting in a different steel product. The lumber used for blocking purposes is not being used during processing but rather between separate and distinct processes. One process has completely terminated. It is only after such termination that the lumber is used in transporting the steel to another of taxpayer’s plants. The lumber is used purely as transportation equipment after the processing has ceased.
The sale or use of transportation equipment, no matter how necessary or essential to an industry, is excepted from the operation of the sales and use tax laws only when it is used during the processing or manufacturing.
In the present case, the lumber involved being used after processing has terminated, its sale or use is not excepted from the operation of the sales and use tax laws.
The decision of the Board of Tax Appeals being unreasonable and unlawful is reversed.

Decision in cause No. 36272 affirmed.

Decision in cause No. 36273 reversed.

Weygandt, C. J., Zimmerman, Bell and Herbert, JJ., concur.
Taft, J., concurs in the syllabus, and also in the judgment as to cause No. 36273, but dissents from the judgment as to cause No. 36272.
Peck, J., concurs in paragraph one of the syllabus and in the judgment as to cause No. 36272.