YOUNGSTOWN SHEET & TUBE COMPANY, APPELLANT, *v.*
LINDLEY, TAX COMMR., APPELLEE.

[Cite as Youngstown Sheet & Tube Co. *v.* Lindley (1988), 38 Ohio St. 3d 232.]

(No. 86-315—Submitted June 9, 1988—Decided August 24, 1988.)

Jones, Day, Reavis & Pogue, Roger F. Day and John L. Kraus, for appellant.

Anthony J. Celebrezze, Jr., attorney general, and James C. Sauer, for appellee.

Per Curiam. Youngstown argues that the coke ovens are fuel-making equipment that is exempt under the Tax Commissioner's Rule TX-15-08(9) (now Ohio Adm. Code 5703-9-21[J]) and R.C. 5739.16(B). Youngstown admits that the rule improperly interpreted the statute then in effect, but argues that R.C. 5739.16(B) requires that the rule be given the effect of statutory law to exempt the equipment.

R.C. 5739.16(B), during the audit period, provided:

"No assessment shall be made or issued against a vendor or consumer for any tax imposed by or pursuant to section 5739.02, 5739.021, 5739.023, or 5739.10 of the Revised Code for any period during which there was in full force and effect a rule or regulation of the tax commissioner under or by virtue of which the collection or payment of any such tax was not required. This division does not bar an assessment when the tax commissioner has substantial evidence of amounts of taxes collected by a vendor from consumers on retail sales which were not returned to the state."[1]

The commissioner's Rule TX-15-08 (9), in effect during the audit period, provided the following:

"Persons engaged in the production of tangible personal property for sale by manufacturing, processing, assembling or refining, may claim exemption when purchasing:

"* * *

"(9) Machinery, equipment or other personal property used primarily to produce nonpurchased gas, water, steam or other products used to operate or to maintain the operating capacity of the machinery, equipment or other personal property in [TX-15-08] (2), (5), (8), (11) and (12) [generally, production equipment] * * *."

This language was adopted by the commissioner effective on January 2, 1962, in then Rule No. 39. On that same date, the "use-on-use" exemption[2] became effective (129 Ohio Laws 1339). The rule evidently implemented

---

[1] A use tax refund has also been claimed. Since R.C. 5741.02(C)(2) provides for a use tax exception when the sale would not be subject to the sales tax, only the sales tax will be discussed. See J.C. Penney Co. v. Limbach (1986), 25 Ohio St. 3d 46, 25 OBR 71, 495 N.E. 2d 1.

[2] This exemption, then R.C. 5739.02(B)(17), stated:

"The tax does not apply to the following:

"* * *

"(17) Sales to persons engaged in manufacturing, processing, assembling, or refining, of tangible personal property for use or consumption directly in the production by manufacturing, processing, assembling, or refining of other tangible personal property for use or consumption

this statutory exemption. The rule provides exemption for equipment that produces an item that is used in the production of another item for sale. The "use-on-use" exemption was repealed on September 1, 1967 (132 Ohio Laws 2308), but was re-enacted effective August 16, 1978 (137 Ohio Laws 3169).

An administrative rule, "* * * issued pursuant to statutory authority, has the force and effect of law unless it is unreasonable or is in clear conflict with statutory enactment governing the same subject matter." *Kroger Grocery & Baking Co.* v. *Glander* (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 474, 77 N.E. 2d 921, 924. Thus, for the period that the "use-on-use" exemption was deleted from the law (and coincidental with the instant audit period), Rule TX-15-08(9) was in conflict with the statute because it stated an exemption for equipment that was not used directly in manufacturing under R.C. 5739.01(E)(2). See *Interlake, Inc.* v. *Kosydar* (1975), 42 Ohio St. 2d 457, 71 O.O. 2d 436, 330 N.E. 2d 444.

In *Interlake,* we held that similar coking equipment was not used directly in manufacturing and was not exempt. We were urged to exempt the equipment under this rule, but held that this question was rendered moot by the determination that the equipment was not excepted under the statutory manufacturing exception. We were not asked to, and did not consider, the effect of R.C. 5739.16(B). We have not been presented with any other case of this court in which this provision has been tested.

R.C. 5739.16(B) is clear: The commissioner may not issue an assessment under R.C. 5739.02 against a vendor or consumer for any period during which a rule of the commissioner did not require the payment of the tax. R.C. 5739.16(B) effectively validates a rule that, contrary to statute, exempted an item from the tax. If Youngstown may claim exemption for this equipment under the rule, it is exempted by virtue of this rule and R.C. 5739.16(B). Thus, we must analyze the rule to determine if it applies to Youngstown's purchases.

Rule TX-15-08(9) permits manufacturers to claim exemption when purchasing equipment used primarily to produce nonpurchased "gas, water, steam or other products used to operate or to maintain the operating capacity" of production machinery. The phrase, "or other products used to operate or to maintain the operating capacity," must be examined to discern if the instant coking equipment is included within the rule's ambit. The doctrine of *ejusdem generis*[3] must be utilized because the general phrase "or other products" follows the specific terms "gas, water, or steam."

"Gas" is defined in Webster's Third New International Dictionary, Unabridged (1986) 937, in pertinent part, as: "* * * a combustible gaseous mixture (as for fuel or illumination) * * *." "Steam" is defined as: "* * * water vapor kept under pressure so as to supply energy for heating, cooking,

---

directly in the production of tangible personal property for sale by manufacturing, processing, assembling, or refining; and of materials and parts for incorporation into any such tangible personal property for use or consumption in production."

[3] We have most recently described this doctrine in *Light* v. *Ohio University* (1986), 28 Ohio St. 3d 66, 68, 28 OBR 165, 167, 502 N.E. 2d 611, 613, as:

"Where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated."

or mechanical work; *also:* the power so generated * * * driving force: ENERGY, POWER * * *." *Id.* at 2232.

The definitions of these terms include uses for fuel and for power generation. The coking equipment at issue produces the coke that, when burned, provides the heat needed to smelt the iron ore in the blast furnaces. The coke fuels the blast furnaces that manufacture iron. The blast furnaces can not operate without the coke. The coking equipment, hence, produced "* * * nonpurchased * * * products used to operate" production equipment under the terms of the rule. Pursuant to R.C. 5739.16(B), the commissioner may not assess these purchases.

The assessment was, therefore, illegal, and the refund claim should have been granted.

Since resolution of this proposition is dispositive, we need not review Youngstown's second proposition of law.

Accordingly, the BTA's decision is unlawful and is hereby reversed.

*Decision reversed.*

MOYER, C.J., SWEENEY, LOCHER, WRIGHT and H. BROWN, JJ., concur.

HOLMES and DOUGLAS, JJ., concur in judgment only.