## ODITA

v.

## OHIO DEPARTMENT OF HUMAN SERVICES et al.

[Cite as *Odita v. Ohio Dept. of Human Serv.* (1993), 88 Ohio App.3d 82.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1252.

Decided May 27, 1993.

84

*Mowery & Youell* and *Deborah A. Tyack,* for relator.

*Lee Fisher,* Attorney General, and *Alan P. Schwepe,* Assistant Attorney General, for respondents.

PEGGY BRYANT, Presiding Judge.

Relator, Florence C. Odita, filed this original action on October 31, 1990, requesting that this court issue a writ of mandamus ordering respondents, Ohio Department of Human Services ("ODHS") and Pamela Hyde, Director of ODHS, to comply with the June 22, 1988 order of the Ohio Equal Employment Opportunity Coordinator ("Coordinator"). The order, which was based upon a finding of probable cause that relator had been discriminated against on the basis of race in the filling of two positions in ODHS, directed respondents to immediately award relator a position at the division chief level, along with back pay and other benefits retroactive to the date on which the first of the these positions was filled.

Respondents have moved to dismiss the complaint for failure to state a claim upon which relief may be granted, or, in the alternative, for summary judgment. In ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6), we examine only the allegations of relator's complaint. Assuming those allegations to be true, as we must for purposes of a Civ.R. 12(B)(6) motion, we will dismiss the complaint only if no set of facts exists which would entitle relator to relief under the allegations of her complaint. *O'Brien v. University Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

In ruling on a motion for summary judgment pursuant to Civ.R. 56, we may consider matters outside the allegations of relator's complaint. In accordance with Civ.R. 56, we consider the evidence most strongly in favor of the nonmoving party; and we will grant summary judgment only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (citing *Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

Consequently, we apply the Civ.R. 12(B)(6) standard to the extent that respondents raise issues solely within the allegations of relator's complaint, and the Civ.R. 56 standard to the extent that respondents raise issues outside the complaint.

■ To obtain a writ of mandamus, relator must demonstrate that she has a clear legal right to relief, that respondents have a clear legal duty to perform the requested act, and that she has no plain and adequate remedy at law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 50–51, 451 N.E.2d 225, 226.

Respondents first argue that relator has failed to establish the existence of a clear legal duty entitling her to a writ of mandamus, because she has identified no authority requiring their compliance with the Coordinator's order. Relator contends in response that the Director of the ODHS has a legal duty to comply with the June 28, 1988 order of the Coordinator by virtue of Ohio Adm.Code 123:1–49–36 and Executive Order 87–30.

Ohio Adm.Code 123:1–49–36 provides that the decision of the division, by its Coordinator, is final with regard to employment discrimination complaints filed by state employees.[1] Executive Order 87–30 provides that the Coordinator "shall possess the full authority to direct" state departments and agencies to "take any action the Coordinator deems appropriate" in the area of equal employment opportunity and directs the Director of the Department of Administrative Services to promulgate regulations pursuant to R.C. Chapter 119 in order to implement the Governor's equal employment opportunity policies.[2] Relator argues that the combination of the executive order and the regulations legally binds the director to comply with the Coordinator's order.

---

1. Ohio Adm.Code 123:1–49–36 provides in part:

"The Division of Equal Employment Opportunity for State Personnel shall upon appeal review the complaint file and all relevant written information made to the Division. * * * When corrective action is ordered, the agency shall report promptly to the Division that the corrective action has been taken. The decision of the Division is final, but shall contain a notice of the right to file a charge affidavit with the Ohio Civil Rights Commission in accordance with Chapter 4112 of Ohio Revised Code, and with the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964."

2. Executive Order 87–30 reads in relevant part:

" * * * I hereby direct the Director of the Department of Administrative Services to promulgate administrative rules, pursuant to Chapter 119 of the Ohio Revised Code, regarding the equal employment opportunity and affirmative action policy set forth in this Executive Order. I hereby direct and order that the said rules and regulations shall be applicable to all state agencies and appointing authorities under my jurisdiction. I further direct and order that the State Equal Employment Opportunity Coordinator, set forth in the said rules and regulations, shall have responsibility for the coordination of Ohio's programs and activities."

██ Administrative rules enacted pursuant to a specific grant of statutory authority have the force and effect of law. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph one of the syllabus; *Youngstown Sheet & Tube Co. v. Lindley* (1988), 38 Ohio St.3d 232, 234, 527 N.E.2d 828, 830. However, an administrative agency can only exercise those powers conferred upon it by the Constitution or the statute which created it or vested it with power. *In re Application of Milton Hardware Co.* (1969), 19 Ohio App.2d 157, 160, 48 O.O.2d 266, 268, 250 N.E.2d 262, 265.

██ R.C. 121.04 creates within the Department of Administrative Services the Office of Equal Employment Opportunity Coordinator, and R.C. 121.07 authorizes the Director of Administrative Services to exercise the powers and perform the duties vested by law in that department, and to "prescribe rules for * * * the performance of its business." Given the statutory placement of the Office of Equal Employment Opportunity Coordinator within the Department of Administrative Services, the duties of that department encompass the duties of the Office of Equal Employment Opportunity Coordinator; hence, the Department of Administrative Services may prescribe regulations relating to the performance of the duties of the Office of Equal Employment Opportunity Coordinator.

██ In accordance with the foregoing statutes, the Director of Administrative Services has promulgated regulations related to equal opportunity in state government, thereby establishing a framework for addressing employee assertions that discrimination on the basis of race, color, religion, sex, national origin, age, or handicap has resulted in a denial of employment benefit, such as promotion. See Ohio Adm.Code Chapter 123:1–49. These regulations provide that the decision of the Coordinator as to a discrimination complaint is "final"; that the agency shall take remedial action, including at least one such action from a specified list, upon a finding by the agency or the Coordinator that the complainant had been discriminated against; and, that the agency shall promptly notify the division that such corrective action has been taken. Ohio Adm.Code 123:1–49–36 and 123:1–49–38.

In the present case, the Coordinator made a determination, pursuant to established regulations, that relator had been denied a promotion on account of race and issued an appropriate order that relator be given relief retroactively. Under the regulations in place, the Coordinator's final decision has the force of law and is a legally binding determination that respondents are compelled to follow.

██ Respondents, relying upon *State ex rel. Armstrong v. Davey* (1935), 130 Ohio St. 160, 163, 4 O.O. 38, 39–40, 198 N.E. 180, 181, contend that mandamus will not lie to enforce even an order that is binding upon them, as compliance with the

order is an executive act dependent upon the judgment or discretion of the Director of ODHS. However, *Davey,* makes clear that mandamus will lie to compel the performance of duties that are ministerial in nature and do not require the exercise of official judgment and discretion.

Contrary to respondents' assertions, compliance with the order is not an executive act dependent upon the exercise of respondents' judgment, but, rather, is a ministerial act that respondents may perform " 'in obedience to the mandate of legal authority, without regard to or the exercise of [their] judgment upon the propriety of the act being done.' " *State ex rel. Trauger v. Nash* (1902), 66 Ohio St. 612, 618, 64 N.E. 558, 559. Having determined that the order is binding upon respondents, they have "no discretion as to acting, however much discretion [they] must necessarily exercise in selecting" the particular position to be awarded to relator. *Id.*

██ Respondents also argue that relator has adequate legal remedies under R.C. Chapter 4112 and Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code, because she can file discrimination actions under state and federal law. Relator contends that these legal remedies are inadequate in the present case, however, because she is not seeking an initial judicial determination that discrimination has occurred; rather, because she has already received a determination of discrimination from the Coordinator, she simply seeks to enforce the rights flowing from that determination. Thus, relator essentially contends that a remedy is inadequate when it requires the holder of that right to relitigate the merits of her case in order to obtain enforcement of those rights. The conclusion that these existing legal remedies are inadequate presupposes, however, that the Coordinator's decision granted relator vested legal rights distinct from those which she possesses under R.C. Chapter 4112 and Section 2000e *et seq.*, Title 42, U.S.Code. Thus, we examine the *nature of the rights* created by the Coordinator's determination.

Ohio Adm.Code 123:1–49–36 gives the complainant the right to a final decision by the Coordinator. The "final decision" language in Ohio Adm.Code 123:1–49–36 initially appears somewhat inconsistent with the requirement of Ohio Adm. Code 123:1–49–36 and 123:1–49–39 that the complainant be notified of her right to file an appropriate charge complaint with the Ohio Civil Rights Commission or United States Equal Employment Opportunity Commission under R.C. Chapter 4112 and Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code. The apparent inconsistency, however, can be resolved by the complaint structure established by Ohio Adm.Code Chapter 123:1–49.

The notice required by Ohio Adm.Code 123:1–49–36 and 123:1–49–39 simply informs a complainant of other available legal actions which a complainant can, if she or he chooses, pursue outside Ohio Adm.Code Chapter 123:1–49 by bringing a

charge complaint under state or federal anti-discrimination laws applicable to the public at large; the reasons for pursuing such alternate remedies may vary, including the availability of other remedies outside Ohio Adm.Code Chapter 123:1–49. The provisions of Ohio Adm.Code Chapter 123:1–49 establish an internal procedure binding on state agencies and "final" for that purpose only.

Respondents' argument implicitly suggests that the regulations require a complainant to enforce her rights in noncompliance situations like the present case by commencing adversarial legal actions in the Ohio Civil Rights Commission pursuant to R.C. Chapter 4112. The problem with such an interpretation is that it ignores the mandatory remedial language of Ohio Adm.Code 123:1–49–38. The regulation clearly states:

"(B) * * * When an agency, or the Division, finds that an employee of the agency was discriminated against and as a result of that discrimination was denied an employment benefit, or an administrative decision adverse to said employee was made, the agency *shall* take remedial actions which *shall* include one or more of the following * * *." (Emphasis added.)

The mandatory language of Ohio Adm.Code 123:1–49–38, and its detailed list of remedies, together with the "final" decision language of Ohio Adm.Code 123:1–49–36, do not contemplate that a complainant be required to "appeal" a favorable decision of the Coordinator to the Ohio Civil Rights Commission to obtain enforcement. Moreover, such an interpretation would essentially require a complainant successful at the administrative level to relitigate the merits of the discrimination claim, would encourage administrative officials to disregard the equal employment mandates of the Coordinator, and would render meaningless the entire administrative procedure set forth in Ohio Adm.Code Chapter 123:1–49.

Thus, Ohio Adm.Code Chapter 123:1–49 seems to recognize that it does not supplant or eliminate other rights state employees may have by virtue of existing state and federal laws; rather, it provides rights to state employees separate from those set forth elsewhere. Further, in providing those rights, Ohio Adm. Code 123:1–49 binds the state to the Coordinator's final decision and creates a clear legal duty on respondents to comply with the Coordinator's decision. Thus, relator's rights are inadequately protected by subsequent action in the Ohio Civil Rights Commission and are capable of being enforced in mandamus.

Respondents next raise arguments which involve events which occurred subsequent to the order. As respondents' remaining arguments raise matters not contained in relator's complaint, we address these matters under the summary judgment standard.

Respondents first contend that subsequent events justify their refusal to comply with the order; and, that this justification negates a finding that a clear abuse of discretion sufficient to support issuance of a writ of mandamus to compel the performance of a discretionary act. Having determined that compliance with the order does not involve performance of a discretionary act, we reject this argument. Furthermore, even if no genuine issue of material facts existed, respondents have failed to demonstrate that they are entitled to judgment as a matter of law.

Specifically, respondents contend that the federal court's finding that relator is unable to prevail on the Title VII claims she filed after the order was issued supersedes the Coordinator's finding and order. This contention is inconsistent with both the express language of Ohio Adm.Code 123:1–49–36 that the Coordinator's decision shall be final, and the spirit of Ohio Adm.Code 123:1–49–39, that the filing of a complaint under Ohio Adm.Code Chapter 123:1–49 "does not in any way limit the rights of an individual to file a charge with the Ohio Civil Rights Commission or the Equal Employment Opportunity Commission." Thus, relator's failure to prevail on her federal claims does not preclude her from enforcing relief previously awarded under Ohio Adm.Code Chapter 123:1–49. Respondents further contend refusal to comply with the order is within their discretion in light of the Inspector General's allegations that relator engaged in misconduct after the order was issued. However, respondents have pointed to no authority that grants them the discretion to modify or deny the relief ordered by the Coordinator because of relator's subsequent conduct. Respondents cannot indefinitely delay compliance with the Coordinator's order in the hope that some subsequent event will justify noncompliance; their only options are to comply with the order or to seek reconsideration of the order pursuant to Ohio Adm.Code 123:1–49–37.

Finally, respondents urge that, if mandamus does lie to enforce the order, this court should nevertheless refuse to issue a writ of mandamus by invoking the doctrine of laches, contending that relator's delay in bringing suit to enforce the order has materially prejudiced respondents. However, respondents have merely alleged that they were materially prejudiced by relator's delay; they have submitted no affidavits or other documentation in support of their allegation. Respondents' bare allegation of material prejudice being insufficient to establish that no genuine issue of fact remains in dispute, respondents have not met the burden imposed upon them by Civ.R. 56(C) with regard to their laches argument.

Having failed to satisfy the standard for either dismissal pursuant to Civ.R. 12(B)(6) or summary judgment pursuant to Civ.R. 56, respondents' motion is

denied. Further, there being no facts at issue, and relator's right to a writ being clear, relator's requested writ of mandamus is granted.

*Motion to dismiss denied*
*and writ granted.*

WHITESIDE and BOWMAN, JJ., concur.