[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 301.]

OHA: THE ASSOCIATION FOR HOSPITALS AND HEALTH SYSTEMS ET AL.,
APPELLANTS, *v.* OHIO DEPARTMENT OF HUMAN SERVICES ET AL., APPELLEES.

[Cite as *OHA: The Assn. for Hosp. & Health Sys. v. Ohio Dept. of Human Serv.,* **2002-Ohio-4209.**]

*Sovereign immunity—Public-duty rule—Judgment reversed and cause remanded to the court of appeals on authority of Wallace v. Ohio Dept. of Commerce.*

(No. 2001-0265—Submitted February 6, 2002—Decided September 4, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-614.

_____

{¶1} The judgment of the court of appeals is reversed, and the cause is remanded to the court of appeals on the authority of *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, decided today.

DOUGLAS, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

MOYER, C.J., dissents.

RESNICK and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶2} I dissented in *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, because I did not believe that the language in R.C. 2743.02 conflicts with the public-duty rule. I continue to believe in the viability of the public-duty rule. Moreover, I believe that the public-duty rule applies in this case and that this case presents a clear example of how the lack of the defense exposes the state to more potential lawsuits than private parties are exposed to because of the state's unique duty to regulate and monitor many aspects of society and business.

{¶3} The fact pattern in this case reflects the problem with this court's recent abrogation of the public-duty rule in *Wallace*. Nothing now prevents anyone from using *any* state regulation as a basis for bringing a civil action against the state for damages. I believe that the General Assembly never intended the phrase "suits between private parties" of R.C. 2743.02 to abrogate the public-duty rule and expose the state to liability for failing to properly carry out its regulatory duties.

{¶4} Because the majority reverses the judgment of the court of appeals by entry without an opinion, and because the facts of this case are important to understand why I believe that the public-duty rule applies, I have set forth the following relevant facts.

{¶5} The Association for Hospitals and Health Systems, Meridia Health System, the Ohio State Medical Association, Central Ohio Newborn Medical, Inc., and the Emergency Medical Physicians of Barberton Ltd. ("appellants") filed a class action suit against appellees, Department of Human Services ("ODHS")[1] and the Ohio Department of Insurance ("ODI"), alleging that their negligence in monitoring the financial status of a health care entity resulted in its insolvency and in turn damages to appellants.

{¶6} Medicaid is a federal program administered by the states for the purpose of providing health care to eligible individuals. In order to receive federal funding for Medicaid, a state must comply with certain federal standards set out in Section 1396a, Title 42, U.S.Code, and have a federally approved plan. Section 1396, Title 42, U.S.Code. However, a state may seek a waiver of certain federal requirements, and still receive federal funding. In order to do this, a state must apply to the Secretary of the United States Department of Health and Human Services ("HHS") for a waiver pursuant to Section 1315, Title 42, U.S.Code. HHS has broad

---

1. After the filing of this lawsuit, appellee, Ohio Department of Human Services, was renamed Ohio Department of Job and Family Services. However, for the purposes of this dissent, I will continue to refer to the appellee as the Ohio Department of Human Services, or ODHS.

discretion whether to grant a waiver and may impose conditions upon a state if the waiver is granted.

{¶7} Appellants' complaint made the following allegations. In 1994, the state of Ohio sought a waiver to implement its own plan, called OhioCare. OhioCare required Medicaid-eligible individuals to enroll in a managed-care plan ("MCP"). The state would then pay the MCPs a certain amount per enrollee. The MCPs contracted with medical service providers, like appellants, to provide medical care to the MCPs' enrollees.

{¶8} HHS granted Ohio's waiver request contingent upon certain conditions, including a requirement that the state monitor the financial status of the MCPs. ODHS agreed to these terms. ODHS also adopted administrative rules that required it to monitor the financial status of the MCPs. ODHS therefore had a duty to monitor the financial status of all MCPs.

{¶9} Personal Physicians Care, Inc. ("PPC"), was an Ohio Medicaid MCP. Appellants provided medical services to Medicaid recipients enrolled in PPC's Medicaid program. However, PPC failed to reimburse appellants for the medical services they provided to PPC's enrollees, due to PPC's insolvency.

{¶10} Appellants alleged that ODHS and ODI negligently failed to monitor the financial status of PPC. Appellants claimed that the negligence of ODHS and ODI was the proximate cause of appellants' losses in that if ODHS and ODI had properly monitored the financial status of PPC, PPC would not have become insolvent. Appellants ask that ODHS and ODI pay all amounts due under the contracts with PPC that remain unpaid.

{¶11} ODHS and ODI each moved the Court of Claims to dismiss the appellants' complaint for failing to state a claim upon which relief could be granted, pursuant to the public-duty rule. The court granted the motions to dismiss. The court of appeals affirmed the trial court's judgment, based on the public-duty rule.

**{¶12}** The majority reverses the appellate court's judgment without opinion on the authority of *Wallace,* 96 Ohio St.3d 266, 2002-Ohio-4210, *773* N.E.2d 1018. Contrary to *Wallace*, I believe that R.C. 2743.02 does not conflict with the public-duty rule and that the public-duty rule is applicable to the facts of this case.

**{¶13}** In *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, this court adopted the public-duty rule. Under the public-duty rule, "[w]hen a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury," and thus there can be no recovery by an individual for a public official's negligence. *Sawicki* at paragraph two of the syllabus. Conversely, pursuant to the special-duty exception to the public-duty rule, recovery against a government entity for a negligent act or omission of a public official may occur if there is "(1) an assumption by the [governmental entity] through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the [governmental entity's] agents that inaction could lead to harm; (3) some form of direct contact between the [governmental entity's] agents and the injured party; and (4) that party's justifiable reliance on the [governmental entity's] affirmative undertaking." Id. at paragraph four of the syllabus. For purposes of determining whether a special-duty exception exists, "[t]he assumption of an affirmative duty on a municipality's part requires that the municipality do more than adhere to its statutory duty. It must voluntarily assume some additional duty." *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 101, 543 N.E.2d 1188.

**{¶14}** The public-duty rule coexisted at common law with the doctrine of sovereign immunity. *Sawicki,* 37 Ohio St.3d at 230, 525 N.E.2d 468. Sovereign immunity of political subdivisions is an absolute defense defined by statute and based on a policy to limit the tort exposure of political subdivisions. See R.C. Chapter 2744. In contrast, the public-duty rule is based on negligence principles and arises

4

from common law. *Id.* at 229-230, 525 N.E.2d 468. The public-duty rule applies to "the determination of the extent to which a statute may encompass the duty upon which negligence is premised. If a special relationship is demonstrated, then a duty is established, and the inquiry will continue into the remaining negligence elements." *Id.* at 230, 525 N.E.2d 468.

{¶15} Appellants first argue that because an administrative rule is adopted by an agency, it cannot *impose* a public duty on an agency for purposes of the public-duty rule. I disagree.

{¶16} "Administrative rules enacted pursuant to a specific grant of legislative authority are to be given the *force and effect* of *law*." (Emphasis added.) *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, at paragraph one of the syllabus; see, also, *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 77 N.E.2d 921; *Youngstown Sheet & Tube Co. v. Lindley* (1988), 38 Ohio St.3d 232, 234, 527 N.E.2d 828. And administrative rules can impose duties upon agencies. See, e.g*., State ex rel. Haddox v. Indus. Comm.* (2000), 88 Ohio St.3d 279, 725 N.E.2d 635. Therefore, I believe that a public duty can be imposed by an administrative rule. Thus, I would find that the administrative rules in this case imposed a public duty on ODHS to monitor the financial status of the MCPs, including PPC.

{¶17} Citing *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.* (1991), 62 Ohio St.3d 97, 579 N.E.2d 695, the appellants claim that the public-duty rule does not apply because, pursuant to the special-duty exception, ODHS owed appellants a special duty to monitor the financial status of PPC. I disagree.

{¶18} At the time *Ohio Hosp. Assn.* was decided, the state of Ohio reimbursed medical service providers for the services they provided to Medicaid-eligible individuals. See *Ohio Hosp. Assn.,* 62 Ohio St.3d at 102-103, 579 N.E.2d 695. Under current law, the state's (ODHS's) only contract is to hire MCPs. The MCPs in turn contracted with medical care providers to provide health care services

for the MCPs' Medicaid enrollees. Thus, under current law, the state (ODHS) has no duty to the medical care providers. In fact, as admitted by appellants at oral argument, the contract between appellants and PPC contained a clause that required the parties to hold the state harmless if PPC failed to pay appellants. See Ohio Adm.Code 5101:3-26-05(D)(10).

{¶19} Thus, I would find that *Ohio Hosp. Assn.* is distinguishable from this case and does not preclude application of the public-duty rule as a defense because appellants have failed to prove any special duty.

{¶20} The appellants also argue that the state's acceptance of the waiver and accompanying conditions, requiring the ODHS to monitor the financial status of the MCPs, constituted a voluntary assumption of a duty to monitor the financial status of the MCPs, thereby precluding application of the public-duty rule. Appellants' argument reveals a fundamental misunderstanding of the public-duty rule.

{¶21} In effect, appellants' argument attacks the state's decision-making process in enacting legislation or adopting administrative rules. Accepting appellants' argument would in effect eliminate the public- duty rule because almost every act by a government entity, whether it be enacting legislation or adopting an administrative rule, would constitute a voluntary undertaking.

{¶22} The public-duty rule does not inquire into the motivation for a decision to enact a law or adopt a rule. Its only inquiry is whether a public official has voluntarily undertaken a duty *beyond* the duty imposed by the law. *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d at 101, 543 N.E.2d 1188. A voluntary undertaking is merely one of the elements of the special-duty exception. *Sawicki,* 37 Ohio St.3d 222, 525 N.E.2d 468, at paragraph four of the syllabus.

{¶23} Appellants' complaint made no allegation that ODHS voluntarily assumed any duty to monitor the financial status of the MCPs in addition to those set out in the Administrative Code. Once the state of Ohio accepted the waiver by HHS of some federal requirements, it was required to accept the conditions and restrictions

imposed by HHS. Accordingly, I would find that the state's decision to accept the waiver conditions did not preclude application of the public-duty rule.

{¶24} Appellants alleged that ODI owed a special duty to appellants, as creditors, to monitor the financial status of PPC pursuant to R.C. Chapter 3903, and thus the public-duty rule did not bar recovery against ODI.

{¶25} It is true that if a statute identifies a *specific group* to which the public official owes a duty, the public-duty rule may not be raised as a defense to the negligent implementation of that duty. See *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 554 N.E.2d 1301, at paragraph two of the syllabus. Here, however, while certain groups are named in R.C. 3903.02(D), they are included in a broad category that encompasses just about every interested person, including the general public. See *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 219, 569 N.E.2d 1042. Thus, I would find that pursuant to *Anderson*, ODI's duty to monitor the financial status of PPC pursuant to R.C. Chapter 3903 was a duty to the general public and did not create a special relationship with creditors specifically.

{¶26} Neither ODHS nor ODI had any contract with appellants. Their only duty was to monitor the financial status of PPC for the benefit of the general public. In a private lawsuit, a plaintiff may recover against a tortfeasor only if the tortfeasor has a duty to that plaintiff. *Shelton v. Indus. Comm.* (1976), 51 Ohio App.2d 125, 130, 5 O.O.3d 286, 367 N.E.2d 51. The public-duty rule merely applies that concept to lawsuits against the government. *Wallace* misses the mark by failing to acknowledge this basic first premise in establishing a duty.

{¶27} In this case, ODHS and ODI had a duty to monitor the financial health of Medicaid MCPs for the benefit of the general public, not for the benefit of the appellants. When appellants were unable to collect their fees from PPC because it went bankrupt, they went looking for a deep pocket and consequently sued the state despite the fact that there was no contractual agreement between appellants and the state. In fact, PPC had agreed to hold the state harmless. With the abrogation of the

public-duty rule, the state becomes fair game for entities, such as appellants herein, seeking a deep pocket despite the fact that they have no contractual ties with the state and the state has no specific obligation to that entity. Therefore, I would find that the public-duty rule applies and that appellants can present no set of facts that would permit them to recover against ODHS or ODI. I believe that the majority's holding has opened another Pandora's Box and now invites all disgruntled parties to sue the state for failure to follow any number of public duties or regulatory responsibilities. Thus, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

_____

Vorys, Sater, Seymour & Pease, L.L.P., Duke W. Thomas, Anthony J. O'Malley and Marcel C. Duhamel, for appellants.

Betty D. Montgomery, Attorney General, Susan M. Sullivan and Peggy W. Corn, Assistant Attorneys General, for appellee Ohio Department of Human Services.

Betty D. Montgomery, Attorney General, Lawrence D. Pratt and Scott W. Meyers, Assistant Attorneys General, for appellee Ohio Department of Insurance.

_____