### State, ex rel. IUOE,
### v.
### Cleveland
*[Cite as 5 AOA 137]*

*Case No. 57729*
*Cuyahoga County, (8th)*
*Decided July 25, 1990*

*William Fadel, Wuliger, Fadel & Beyer, 1340 Sumner Court, Cleveland, Ohio 44115, for Relator.*

*Peter N. Kirsanow, Assistant Director of Law, City Hall, Room 106, 601 Lakeside Avenue, Cleveland, Ohio 44114, for Respondent.*

MCMANAMON, P.J.

Relator, the International Union of Operating Engineers, Locals 18, 18A, 18B, 18C, 18RA, AFL-CIO (hereinafter the "Union"), is seeking a writ of mandamus to compel respondent, the City of Cleveland (hereinafter the "City"), to pay wages to its Union employees, the construction equipment operators and master mechanics in its water department, in accord with prevailing wages paid in private industry from May 1, 1987 to the present. Because we find that the Union has an adequate remedy available within Chapter 4117, which governs public employees' collective bargaining, we deny the writ of mandamus.

The Union is an employee labor organization as defined in R.C. 4117.01(D) and the City is a public employer as defined in R.C. 4117.01(B).[1] On March 1, 1983, pursuant to a "Memorandum of Understanding" signed by the parties, the Union and the City agreed that:

(1) The Local 18 employees will continue to receive their forty (40) hour weekly wage *** but the forty (40) hours shall begin on Monday 12:01 A.M. and end on Sunday 12:00 A.M. however no premium pay shall be paid for any work performed on Saturday or Sunday.

(2) The Local 18 employees shall receive double time for all hours worked over eight (8) hours per day or forty (40) hours per week whichever is greatest.

After the passage of the new Chapter 4117 in October, 1983, but before the April 1, 1984 effective date of the statutes, the City recognized the Union as the bargaining representative of its construction equipment operators and master mechanics.

Before May 1, 1987, the City's payment of overtime was consistent with the Construction Employers Association Building Agreement (hereinafter "CEABA"), which was in effect between the Union and the Construction Employers Association. From May 1, 1983 through April 30, 1985, CEABA provided that all work performed in excess of eight hours per day or forty hours per week and all work performed on weekends and holidays was to be compensated at a "double time" rate. From May 1, 1985 through April 30, 1988, CEABA provided for the payment of overtime on weekdays at a "time and a half" rate for the first two hours worked in excess of the designated shift time and at a "double time" rate for hours worked thereafter. For Saturdays, overtime was to be paid at a rate of "time and a half" for the first ten hours and at a "double time" rate thereafter. For Sundays and holidays, all hours worked were to be paid at a "double time" rate. For the time period May 1, 1988 through April 30, 1991, CEABA provides for payment at "time and a half" the established rate of pay for weekdays for the first two hours of overtime worked. For Saturdays, "time and a half" is to be paid for the first ten hours worked. All other overtime, including Sundays and holidays, is to be paid at "double time" the established rate.

In early 1987 the parties entered into negotiations for a collective bargaining agreement with respect to hours, wages and conditions of employment. Sometime after May 1, 1987, however, the City unilaterally changed the amount and method of overtime payments made to the Union members. For work on weekdays, overtime for all hours worked, other than the designated shift time of 7:00 a.m. to 3:30 p.m., was paid at a "time and a half" rate. For work on weekends, the City paid a "time and a half" rate for all hours worked. Additionally, although CEABA 1985-88 provided for "shift differential pay" or "premium pay" of an additional twenty-five cents per hour for work on the second shift and an additional fifty cents per hour for work on the third shift, the City did not pay shift differential premiums. The parties' negotiations reached an impasse in June or July, 1987, and no collective bargaining agreement currently exists between the City and the Union with respect to hours, wages and conditions of employment.

On May 15, 1989, the Union brought this mandamus action to compel the City to pay its construction equipment operators and master mechanics the prevailing wages paid in the

trades as[2] required in Section 191 of The Charter of the City of Cleveland. In support of its position, the Union relies upon R.C. 4117.10(A) which provides in part that "[w]here no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees."

The City argues mandamus is inappropriate because the Union gas an adequate remedy available within Chapter 4117. Specifically, the City contends (1) a dispute settlement procedure is available pursuant to R.C. 4117.14(C) and (D) to further the negotiation process with respect to the employees' wages, and (2) the filing of an unfair labor practice charge is or was available under R.C. 4117.12 to remedy the unilateral change in the amount of wages paid.[3]

It is incumbent upon a party seeking mandamus to show it has no plain and adequate remedy in the ordinary course of law. See R.C. 2731.05; State, ex rel. *Matheis v. Russo* (1990), 50 Ohio St. 3d 204, ___ N.E. 2d ___. Thus, although this court may be of the opinion that the Union members are entitled to the requested wages pursuant to R.C. 4117.10(A), in light of the remedy available in R.C. 4117.01, et. seq., mandamus is not the appropriate vehicle to obtain the requested relief.

Chapter 4117 governs public employees' collective bargaining. The duty to bargain collectively arises when a public employer is notified of the certification of an exclusive representative with whom to bargain. *Franklin County Board of County Commissioners v. SERB*, 1989 SERB 4-116 (10th Dist. Ct. App., Franklin, Sept. 19, 1989). Certification occurs through the procedures provided for in R.C. 4117.05, Id., or by achieving "deemed certified" status through recognition based on prior practice, *State Emnloyment Relations Board v. Bedford Heights* (1987), 41 Ohio App. 3d 21, 534 N.E. 2d 115. In this case, the City stipulated that it has recognized the Union as the bargaining representative of its construction equipment operators and master mechanics and we are unaware of any challenge to that recognized status. Therefore, the parties were under a duty to bargain collectively, and thus subject to Chapter 4117 and the Jurisdiction of the State Employment Relations Board ("SERB").

All matters pertaining to wages, hours, and conditions of employment are subject to collective bargaining. R.C. 4117. 08(A). Any unilateral change, therefore, in a matter subject to collective bargaining may constitute an unfair labor practice under R.C. 4117.11(A) (5) and would be a violation of the duty to bargain collectively. See, e.g., In re City of Lakewood, 1988 SERB 4-141 (Com. Pl. No. 153635, Cuyahoga, Dec. 27, 1988), unreported; *see also National Labor Relations Board v. Katz* (1962), 369 U.S. 736. This court has previously held "that conduct which actually or arguably constitutes an unfair labor practice under R.C. Chapter 4117 is subject to the exclusive jurisdiction of SERB." *Turnik v. City of Cleveland* (May 22, 1986), Cuyahoga App. No. 50390, unreported. Thus, the City's unilateral change in the wages of its construction equipment operators and master mechanics while under the duty to bargain collectively actually or arguably constituted or constitutes an unfair labor practice under R.C. 4117.11(A)(5) and is subject to SERB's exclusive jurisdiction. Unfair labor practices are to be remedied by SERB pursuant to R.C. 4117.12. The Union's remedy, therefore, was or is to file a charge with SERB under R.C. 4117.12 for the City's alleged continuing unfair labor practice.[4]

Since an adequate remedy exists in the ordinary course of law, the prerequisite for the issuance of a writ of mandamus has not been met. Accordingly, the writ is denied and the petition for mandamus is dismissed.

Costs to relator.

*Writ denied.*

JOHN V. CORRIGAN, J., and NAHRA, J., concur.

---

[1] The facts in this case are derived from the parties' filed Stipulation of Facts and the appointed Commissioner's Findings of Facts which were made following an evidentiary hearing.

[2] Section 191 of the City's Charter provides, in relevant part, that:

"The salary or compensation of all officers and employees in the unclassified service of the City shall be fixed by ordinance, or as may be provided by ordinance. The salary or compensation of all other officers and employees shall be fixed by the appointing authority in accordance with ability, fitness and seniority within the limits set forth in the Council's salary or compensation schedule for which provision is hereinafter made. The Council shall by ordinance establish a schedule of compensation for officers and employees in the classified service, which schedule shall provide for like compensation for like services and shall provide mini-

mum and maximum rates (which may be identical) of salary or compensation for each grade and classification of positions determined by the Civil Service Commission under Section 126 of this Charter. Only in the case of employees in those classifications for which the Council provided in 1979 a schedule of compensation in accordance with prevailing wages paid in the building and construction trades, the schedule established by the Council shall be in accordance with the prevailing rates of salary or compensation for such services. For the guidance of Council in determining the foregoing schedule the Civil Service Commission shall prepare salary or compensation schedules, and the Mayor or any director may, and when required by Council shall, prepare suggested salary or compensation schedules."

[3] The City also has argued that injunctive relief is available pursuant to R.C. 4117.12(D) [sic]. The petitioning of a court of common pleas for temporary injunctive relief by the State Employment Relations Board under R.C. 4117.12(C), however, is precipitated by the filing of an unfair labor charge and is discretionary with the Board.

[4] The fact that no collective bargaining agreement yet exists between the parties does not persuade us to conclude that this remedy was or is not available since the City's duty to bargain collectively arose before the unilateral change when the City recognized the Union as its employees' bargaining representative.