STATE EMPLOYMENT RELATIONS BOARD, APPELLEE; LOCAL 1497, I.A.F.F., APPELLEE, *v.* CITY OF BEDFORD HEIGHTS, APPELLANT.

(No. 54484—Decided December 7, 1987.)

*Anthony J. Celebrezze, Jr.,* attorney general, *Joseph M. Oser* and *Daniel W. Taylor,* for appellee State Employment Relations Board.

*Joseph W. Diemert, Jr.,* for intervening appellee Local 1497, I.A.F.F.

*Charles E. Merchant* and *K.J. Montgomery,* for appellant.

NAHRA, C.J. The city of Bedford Heights, appellant, is appealing the judgment of the trial court which affirmed the decision of the State Employment Relations Board, appellee, in favor of the International Association of Fire Fighters, Local 1497, intervening-appellee.

On October 29, 1986, the International Association of Fire Fighters, Local 1497 (hereinafter "Local 1497") filed an unfair labor practice charge against the city of Bedford Heights (hereinafter the "city") after the city unilaterally changed the hours worked by fire fighters from twenty-four on and forty-eight off to ten-hour day and fourteen-hour night shifts. A hearing was held on December 29 and 30, 1986, and January 22, 1987, at which times the following relevant facts were adduced.

Local 1497 has been in existence

since 1964. Twenty-three of the twenty-five fire fighters in the city's fire department were members of Local 1497 at the times in issue. The city deducted union dues from these members' paychecks and did not object to the union's representation of the fire fighters in grievances with the city.

Since at least 1969, the city has negotiated employment terms and conditions with Local 1497 every two years. No other union has represented the fire fighters. Prior to 1984, after an agreement was reached between the city's representatives and the fire-fighter members of the negotiating team, the city council would adopt ordinances reflecting the agreement. In 1984, a memorandum of understanding was entered into between the parties which was effective through December 1985. City council again enacted ordinances reflecting the agreement reached during negotiations.

In November 1985, negotiations commenced for 1986-1987. In April 1986, the city's finance director and fire fighter Captain Kearney were notified of changes in the Fair Labor Standards Act regarding overtime hours for fire fighters. A plan submitted on behalf of the fire fighters to bring the city into compliance with the federal Act was rejected, and Captain Kearney was instructed to develop a ten- and fourteen-hour plan. Since 1984, overtime payments to fire fighters were increasing significantly. Sick time was the greatest single factor contributing to the overtime payments. Under the twenty-four-hour-on and forty-eight-hour-off schedule, twenty-four hours of overtime cost the city approximately $500 per occurrence.

In June and July 1986, offers and counteroffers were made and rejected principally over salary increases. On September 10, in a telephone conference between the city's mayor and Local 1497 negotiating members, the mayor suggested the possibility of changing the fire fighters' schedules, and on or about October 16, the city posted a notice that work schedules would be changed on October 28. On that day, the fire fighters' work schedule was changed from twenty-four hours on and forty-eight hours off to four ten-hour days on, two days off; four fourteen-hour nights on, two days off; four days on, two days off; and three nights on and three days off.

From these findings of fact, the hearing officer concluded and recommended, among other things, that Local 1497 was the exclusive representative of the Bedford Heights fire fighters and that a change in the work schedule of the fire fighters was a topic which required bargaining between the city and Local 1497. The State Employment Relations Board (hereinafter "SERB") adopted these recommendations (and others with slight modifications) of the hearing officer and the city appealed. The trial court found R.C. Chapter 4117 constitutional and affirmed the decision of the SERB. The city timely appealed.

I

The city's first assigned error is that:

"The court erred in finding that the order of the State Employment Relations Board is supported by substantial evidence on the record as a whole thereby supporting the finding of SERB that Local 1497, I.A.F.F., was deemed to be certified as the exclusive representative of the members of the Bedford Heights Fire Department."

Judicial review of a decision of an administrative agency is limited. The factual findings of SERB are conclusive if they are supported by substantial evidence on the record as a whole. R.C. 4117.13(B) and (D). Addi-

tionally, due deference must be given to the interpretation of statutes by an administrative agency which has been delegated the responsibility of implementing such laws. *Jones Metal Products Co.* v. *Walker* (1972), 29 Ohio St. 2d 173, 181, 58 O.O. 2d 393, 398, 281 N.E. 2d 1, 8; *Ohio Bus Line Co.* v. *Bowers* (1964), 1 Ohio App. 2d 122, 126, 30 O.O. 2d 150, 152, 200 N.E. 2d 688, 690.

In this case, the city contends that the finding of SERB that Local 1497 has achieved "deemed certified" status is not supported by the requisite amount of evidence. Section 4(A) of S.B. 133 (140 Ohio Laws, Part I, 336, 367), which specifically confers the "deemed certified" status, provides that:

"Exclusive recognition through a written contract, agreement, or memorandum of understanding by a public employer to an employee organization whether specifically stated or through tradition, custom, practice, election, or negotiation the employee organization has been the only employee organization representing all employees in the unit is protected subject to the time restriction in division (B) of section 4117.05 of the Revised Code. Notwithstanding any other provision of this act, an employee organization recognized as the exclusive representative shall be deemed certified until challenged by another employee organization under the provisions of this act and the State Employment Relations Board has certified an exclusive representative."

The hearing officer determined that Section 4(A) was inapplicable because there was no written agreement between the parties, although arguably the city's ordinances codifying the agreements reached in 1984 were still in effect. The hearing officer went on to conclude that Local 1497, in the absence of a written agreement, was "recognized" by the city pursuant to Section 4(B) of S.B. 133. Section 4(B) provides that:

"Any employee organization otherwise recognized by the public employer without a written contract, agreement, or memorandum of understanding shall continue to be recognized until challenged as provided in this act, and the Board has certified an exclusive representative."

SERB, however, found the provisions of either Section 4(A) or 4(B) applicable to the facts of this matter and determined that the result of both Sections 4(A) and 4(B) was "deemed certified" status. *In re Bedford Heights* (July 24, 1987), SERB No. 87-016, 1987 SERB, at 3-54.

In this case, we need not reach the issue of whether "deemed certified" status is extended pursuant to Section 4(B) because the language of Section 4(A) is broad enough to encompass the situation herein. As indicated by SERB, Section 4 was "designed to maintain the status quo in those public sector employer/employee collective bargaining relationships antedating April 1, 1984." *In re Bedford Heights, supra*, at 3-56 (footnote omitted). Section 4(A) is concerned with preserving the relationship between a public sector employer and an employee organization which has been recognized by the employer as the exclusive representative of the employees in the unit. After providing for exclusive recognition through written contracts, Section 4(A) goes on to provide that "[n]otwithstanding any other provision of this act, an employee organization recognized as the exclusive representative shall be deemed certified until challenged by another employee organization * * *." There is substantial evidence in this case that the city recognized Local 1497 as the exclusive representative of the fire fighters. As early as 1969 the city negotiated wages,

conditions of employment and benefits with representatives of only Local 1497. Negotiations took place every two years and, prior to 1984, the parties' agreements were memorialized in proposed legislation which council enacted into ordinances. The city has never objected to Local 1497's representing fire fighters in grievances and, for at least the last seven years, the city has deducted union dues from Local 1497 members' paychecks. Because of the city's past actions in recognizing Local 1497 as the exclusive representative of the fire fighters, neither the trial court nor SERB erred in concluding that Section 4(A) conferred "deemed certified" status upon Local 1497. Accordingly, this assignment of error is overruled.

## II

The city's second assigned error is that:

"The court erred in finding that the order of the State Employment Relations Board is lawful and that the change of schedule of the firefigters [sic] is a matter of mandatory collective bargaining under R.C. 4117.08 (C)."

The city contends that it has an unimpaired right to reschedule the fire fighters from twenty-four forty-eight-hour shifts to ten fourteen-hour shifts and that it must submit to bargaining only the effects, if any, caused by its scheduling.

R.C. 4117.08, which governs subjects appropriate for collective bargaining, provides in pertinent part that:

"(A) All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section.

"* * *

"(C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:

"* * *

"(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees[.]"

According to these subsections, the city does have the unimpaired right to schedule employees unless the city has agreed otherwise in a collective bargaining agreement, which it has not done in this case. However, the last paragraph of R.C. 4117.08 provides, in relevant part, that:

"The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, [and] terms and conditions of employment * * *."

Pursuant to this paragraph, and contrary to the city's contention, the city is required to bargain on the subject of scheduling, even though scheduling is a subject which has been reserved for managerial discretion, if the scheduling affects hours of employment. Changing the work schedule of fire fighters from twenty-four hours on and forty-eight hours off to ten-hour day and fourteen-hour night shifts certainly affects the hours of employment and therefore requires negotiation. See, *e.g.*, *Detroit Police Officers Assn.* v. *Detroit* (Mich. Emp. Relations Comm., Apr. 19, 1985), 3 Pub. Emp. Bargaining (CCH), Paragraph 44,257 (scheduling of shifts impacts upon employees' working hours); *In re Internatl. Assn. of Professional Fire Fighters & Merrill* (Wis. Emp. Relations Comm., Apr. 13, 1977), 3 Pub.

Emp. Bargaining (CCH), Paragraph 40,130 (proposed work schedule change from twenty-four hours on and forty-eight hours off to twenty-four hours on followed by twenty-four hours off on two days and by ninety-six hours off on four days related primarily to the hours and conditions of employment). Accordingly, this assignment of error is overruled.█

*Judgment affirmed.*

PRYATEL and DAVID T. MATIA, JJ., concur.