OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas
J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.  The
advance sheets to Ohio St.3d will also contain the volume and
page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Ohio Council 8, American Federation of State, County and
Municipal Employees, AFL-CIO et al., Appellants, v. City of
Cincinnati et al.; State Employment Relations Board, Appellee.
[Cite as Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp.,
AFL-CIO v. Cincinnati (1994),        Ohio St.3d        .]
Public employment -- Collective bargaining -- Appropriate
bargaining unit -- Ohio Adm.Code 4117-5-01(F) is in clear
conflict with Section 4(A) of Am. Sub. S.B. No. 133 and is
therefore invalid -- Adjustments or alterations to deemed
certified collective bargaining units are not permitted until
challenged by another employee organization.
                         - - -
Ohio Adm. Code 4117-5-01(F) is in clear conflict with Section
     4(A) of Am. Sub. S.B. No. 133 (140 Ohio Laws, Part I, 336,
     367) and is, therefore, invalid.  Pursuant to Section 4(A),
     adjustments or alterations to deemed certified collective
     bargaining units are not permitted until challenged by
     another employee organization.
                         - - -
     (No. 93-718--Submitted March 22, 1994--Decided July 27,
1994.)
     Appeal from the Court of Appeals for Franklin County, No.
92AP-782.
     On April 30, 1990 and May 18, 1990, the city of Cincinnati
filed with the State Employment Relations Board ("SERB") five
separate petitions1 for clarification of a bargaining unit
represented by appellants, Ohio Council 8 and Locals 190, 223,
240, 250, 1543 and 3119, American Federation of State, County,
and Municipal Employees, AFL-CIO ("AFSCME").  Prior to that time,
and dating back to November 1, 1958, the city and AFSCME had been
governed by a series of written collective bargaining
agreements.  One of the petitions2 sought to exclude from the
bargaining unit nine employees classified as waterworks guards.
The city contended that these guards were prohibited from being
included in the bargaining unit by R.C. 4117.06(D)(2), which
provides, in pertinent part, that in determining an appropriate
bargaining unit, SERB shall not include "any public employee
employed as a guard to enforce against other employees rules to

protect property of the employer or to protect the safety of persons on the employer's premises in a unit with other employees." AFSCME objected to the petitions and argued that pursuant to Section 4(A) of Am.Sub. S.B. No. 133 (140 Ohio Laws, Part I, 336, 367), SERB had no jurisdiction to amend or clarify bargaining units that are deemed certified until representation is challenged by another employee organization.

On March 11, 1991, the hearing officer issued his report and recommendation. He found that AFSCME was the exclusive representative of the bargaining unit and "has been the exclusive representative of this bargaining unit for over twenty-five years." Accordingly, "[t]he bargaining unit which is the subject of the Employer's petitions is a deemed certified unit, pursuant to Amended Substitute Senate Bill 133, Section 4(A)." Nevertheless, the hearing officer concluded that SERB "possesses the necessary jurisdiction to review and resolve the petitions which have given rise to this matter" and recommended that SERB place the guards "in a separate, certified bargaining unit, and certify [AFSCME] as the exclusive representative of this unit."[3] On May 10, 1991, SERB issued its directive adopting the recommendations of the hearing officer and placing the guards in a separate unit, with AFSCME "certified as the exclusive representative for all employees in this unit."[4]

AFSCME appealed the May 10, 1991 SERB directive to the Franklin County Court of Common Pleas. The common pleas court reversed the directive, finding that SERB "was without jurisdiction to entertain the petitions of the city as to the unit compositions."

Upon further appeal by SERB,[5] the court of appeals reversed the common pleas court, finding that the latter had no jurisdiction. The court reasoned that Am. Sub. S.B. No. 133, Section 4(A) did not bar SERB from determining the appropriate bargaining unit, but only protects the deemed certified status of the exclusively recognized representative. The court held that SERB's actions did not contravene Section 4(A), because SERB only determined the appropriate bargaining unit, while leaving AFSCME's deemed certified status intact. It further held that under R.C. 4117.06(A), SERB's determination as to unit appropriateness "is final and conclusive and not appealable to the court." Thus, the appeals court concluded that the common pleas court had no jurisdiction to review SERB's determination.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Ronald H. Janetzke, for appellants.
Lee Fisher, Attorney General, and Vincent T. Lombardo, Assistant Attorney General, for appellee.
Lucas, Prendergast, Albright, Gibson & Newman and Robert J. Walter, urging reversal on behalf of amicus curiae, Ohio Association of Public School Employees.

Alice Robie Resnick, J. Ohio Adm. Code 4117-5-01(F) provides:
"For a unit that has not been approved by the board through the procedures of division (A) of section 4117.05 or 4117.07 of the Revised Code, a petition for unit clarification or amendment of a deemed certified unit may be filed only during the period of

one hundred twenty days to ninety days before the expiration date f the collective bargaining agreement, after expiration of the collective bargaining agreement, or at any other time if the petition is submitted by mutual request of the parties. Unless the petition for amendment or clarification of such a unit is submitted by mutual request, the board will consider clarification or amendment only if the petition alleges that the unit contains a combination of employees prohibited by division (D) of section 4117.06 of the Revised Code."

This rule would allow SERB to entertain employer petitions to adjust or alter deemed certified collective bargaining units that violate the prohibitions of R.C. 4117.06(D) regarding composition of units, irrespective of whether exclusive representation is challenged by another employee organization. See In re Univ. of Cincinnati (Univ. Hosp.) (May 24, 1985), SERB 85-022; In re Akron Pub. Schools (June 14, 1985), SERB 85-025; In re Lucas Cty. Dept. of Human Serv. (June 13, 1986), SERB 86-024; In re Cuyahoga Cty. Bd. of Commrs. (June 10, 1987), SERB 87-012. See, also, Drucker, Collective Bargaining Law in Ohio (1993) 233-236, Section 5.18.

A rule promulgated by an agency, "'issued pursuant to statutory authority, has the force and effect of law unless it is unreasonable or is in clear conflict with statutory enactment governing the same subject matter.'" Youngstown Sheet & Tube Co. v. Lindley (1988), 38 Ohio St.3d 232, 234, 527 N.E.2d 828, 830, quoting Kroger Grocery & Baking Co. v. Glander (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 474, 77 N.E.2d 921, 924.

Section 4(A) of the Am. Sub. S.B. No. 133 provides that:

"Exclusive recognition through a written contract, agreement, or memorandum of understanding by a public employer to an employee organization whether specifically stated or through tradition, custom, practice, election, or negotiation [that] the employee organization has been the only employee organization representing all employees in the unit is protected subject to the time restriction in division (B) of section 4117.05 of the Revised Code. Notwithstanding any other provision of this act, an employee organization recognized as the exclusive representative shall be deemed certified until challenged by another employee organization under the provisions of this act and the State Employment Relations Board has certified an exclusive representative." (Emphasis added.) 140 Ohio Laws, Part I, 336, 367.

The issue presented in this case is whether Ohio Adm. Code 4117-5-01(F) is in conflict with Section 4(A) of Am. Sub. S.B. No. 133.

Section 4(A) expressly states that an employee organization's deemed certified status continues "until challenged by another employee organization." SERB contends, and the court of appeals held, that this language does not preclude SERB, in the absence of such a challenge, from changing the configuration of a bargaining unit that contains a combination of employees prohibited by R.C. 4117.06(D). SERB advances two arguments in support of this contention: (1) the "separate concept" argument, and (2) the "exception" argument.

In order to cogently discuss each of SERB's arguments, we must first set forth both arguments in full. The "separate concept" argument was explained by the court of appeals as

follows:

"The concept of whether a bargaining unit includes the appropriate job classifications is a concept which is separate from the issue of certification. A challenge to the appropriateness of a bargaining unit does not necessarily threaten a representative's deemed certified status

"***

"***Whether SERB segments the bargaining unit according to the prohibitions set forth in R.C. 4117.06(D)(2) or decides not to segment the bargaining unit, the representative's 'deemed certified' status is not affected."

The "exception" argument, on the other hand, begins with the premise that "it is clear from the total statutory reference that the boundaries of exclusive representation are fixed by the unit in which pre-April 1, 1984 recognition occurred. Beyond this, the legislative command, expressed specifically in the relevant enactments, requires that the 'deemed certified' recognition acquired before April 1, 1984, continue indefinitely unless displaced. Displacement, according to the Act, occurs when an incumbent employee organization is successfully 'challenged' by a rival employee organization with consequent [SERB] certification." (Emphasis added.) In re Univ. of Cincinnati (Univ. Hosp.), supra, SERB 85-022, at 122. The argument continues, however, that "[t]here is one exception to this principle. That exception is operative when the unit in question combined classifications before April 1, 1984, which could not have been joined after that date. *** [I]t is hardly conceivable that the legislature intended to proscribe specific job combinations in the same unit (as it obviously did) and at the same time intended to allow those combinations to stand indefinitely simply because they were negotiated before the effective date of the Act." Id.

The "separate concept" argument erroneously presumes that it is only the union and not the preexisting bargaining units that are deemed certified by Section 4(A) of Am. Sub. S.B. No. 133. However, "[w]hen enacted, the [Ohio Public Employees' Bargaining] Act contained special uncodified or temporary provisions that related to historical units and bargaining relationships. The effect, in part, of these provisions was to preserve the units, agreements, and bargaining structures that existed prior to April 1, 1984 [the effective date of R.C. 4117.05 as enacted by the Act]. By operation of Section 4 of these temporary provisions, existing units were preserved in their original, pre-Act form, and public employers have been required to pursue bargaining relationships with the exclusive representatives of these units as if there had been a SERB-certified election and designation of bargaining agent." (Emphasis added; footnotes omitted.) Drucker, Collective Bargaining Law in Ohio, supra, at 233-234, Section 5.18(A). "The unions and units thus were referred to as having been 'grandfathered' into their certification rights***." (Emphasis added.) Id. at 244, Section 6.02(c).

Section 4 of Am. Sub. S.B. No. 133, therefore, was clearly "'designed to maintain the status quo in those public sector employer/employee collective bargaining relationships antedating April 1, 1984.'" State Emp. Relations Bd. v. Bedford Hts. (1987), 41 Ohio App. 3d 21, 23, 534 N.E.2d 115, 117, quoting In re Bedford Hts. (July 24, 1987), SERB 87-016, at 3-56. "It is

clear from the emphasized language of Section 4 of the Act that the legislature intended that those bargaining units in existence on October 6, 1983 [the effective date of Section 4], would remain intact." (Emphasis added.) Univ. of Cincinnati, Univ. Hosp. v. State Emp. Relations Bd. (1988), 42 Ohio App. 3d 78, 81, 536 N.E.2d 408, 411.

Further, the idea that under Section 4(A), the composition of a bargaining unit is a concept distinct from representative certification is akin to envisioning a wagon as a concept distinct from its wheels. "[T]he appropriateness of the unit is an integral, interwoven, and indispensable element in selecting an exclusive representative.*** The bargaining unit describes the 'physical geography' of collective bargaining." Day, A Primer of Unit Design Under Ohio's Public Employees' Collective Bargaining Statute (1986), 11 U. Dayton L.Rev. 221, 222-223.

Moreover, SERB's "separate concept" argument directly conflicts with its "exception" argument embraced by Ohio Adm. Code 4117-5-01(F). The exception argument assumes that "the boundaries of exclusive representation are fixed by the unit in which pre-April 1, 1984 recognition occurred." (Emphasis added.) In re Univ. of Cincinnati (Univ. Hosp.), supra, SERB 85-022 at 122. Specifically, Ohio Adm. Code 4117-5-01(F) provides that what is being clarified or amended is "a deemed certified unit." (Emphasis added.) It would be anomalous to uphold Ohio Adm. Code 4117-5-01(F) pursuant to a concept which it belies.

SERB's "exception" argument is also faulty for three very simple reasons. The first reason is that Section 4(A) of Am. Sub. S.B. No. 133 contains no such exception. On the other hand, Section 4(D) of Am. Sub. S.B. No. 133 does contain the very exception that SERB seeks to have read into Section 4(A), but confines it to cases of previously granted nonexclusive recognition. Section 4(D) provides that:

"Nonexclusive recognition previously granted through an agreement or memorandum of understanding shall not preclude the Board from: (1) determining an appropriate unit, (2) if necessary, removing classifications from a bargaining unit under an existing nonexclusive contract, agreement or memorandum of understanding, and (3) holding a recognition-certification election to determine an exclusive representative for all such employees deemed part of the appropriate unit."

As SERB itself has succinctly noted, "Section 4(D) is concerned with non-exclusive representation and treats it differently from exclusive recognition. This is a distinction that obviously intends a difference between exclusive and non-exclusive." In re Bedford Hts. (July 24, 1987), SERB 87-016 at 3-56, fn. 6.6

The second reason is that the principles of statutory construction preclude SERB from interpreting an R.C. 4117.06(D) exception into Section 4(A) of Am.Sub.S.B. No. 133. Once it is determined, as it was in In re Univ. of Cincinnati (Univ. Hosp.), supra, SERB 85-022 at 122, that "the legislative command, expressed specifically in the relevant enactments requires that the 'deemed certified' recognition, acquired before April 1, 1984, continue indefinitely unless *** an incumbent employee organization is successfully 'challenged' by a rival employee organization with consequent [SERB] certification," that is the

end of the matter.  There can be no further interpretation.  "The first general maxim of interpretation *** is, that it is not allowable to interpret what has no need of interpretation." Lawler v. Burt (1857), 7 Ohio St. 340, 350.  "It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation."  Wingate v. Hordge (1979), 60 Ohio St.2d 55, 58, 14 I,I,3d 212, 214, 396 N.E. 2d 770, 772.

The third reason is that Section 4(A)'s provision for deemed certification operates "[n]otwithstanding any other provision of this act."  In Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St. 3d 339, 587 N.E. 2d 835, the employer refused to negotiate with a deemed certified employee organization pending a determination by SERB that the employee organization was a valid bargaining unit.  We explained as follows:

"The appellate court further determined that, inasmuch as the officers were not public employees under R.C. 4117.01(C), they could not form an 'employee organization' as defined in R.C. 4117.01(D).  This determination is erroneous.  Section 4(A) specifically provides for the grandfathering of existing bargaining representatives '[n]otwithstanding any other provision of this act.'  Accordingly, reference to R.C. 4117.01(D) to determine what constitutes a preexisting employee organization is at odds with the plain language of Section 4(A)."  Id. at 345, 587 N.E.2d at 840.

Similarly, reference to R.C.4117.06(D) to determine what preexisting units are appropriate is at odds with the plain language of Section 4(A).

Accordingly, we hold that Ohio Adm. Code 4117-5-01(F) is in clear conflict with Section 4(A) of Am. Sub. S.B. No. 133 and is, therefore, invalid.  Whereas Ohio Adm. Code 4117-5-01(F) authorizes adjustments or alterations to deemed certified collective bargaining units absent a challenge by and subsequent certification of a rival employee organization, Section 4(A) forbids it.7  Thus, SERB was without jursidiction to hear the city's petitions.

In light of the foregoing, the decision of the court of appeals is reversed, and the judgment of the trial court is reinstated.

Judgement reversed.

A.W. Sweeney, Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

Moyer, C.J., and Wright, J., dissent.

FOOTNOTES:

1    The petitions were designated SERB case Nos. 90-REP-04-0106, 90-REP-04-0221, 90-REP-05-0116, 90-REP-05-0117 and 90-REP-05-0118.

2    Case No. 90-REP-04-221.

3    SERB seeks to divorce itself from the analysis of the hearing officer regarding jurisdiction and the applicability of Section 4(A) of Am.Sub.S.B. No. 133 to the extent of his finding that Section 4(A) applies only to "the period of time extending three years after April 1, 1984, that is, until April 1, 1987."

4    The parties initially disagreed as to whether this directive left AFSCME the deemed certified exclusive representative of the newly severed unit of guards or whether it changed AFSCME's status to that of SERB certified.  SERB, however, now concedes that "[b]oth the guard unit and the non-guard unit are deemed

certified and AFSCME is the deemed certified exclusive representative of both units."

The city also attempted to appeal the judgment of the common pleas court, but the court of appeals dismissed the city's appeal as untimely filed. The city is therefore not a party to this appeal.

This interplay between Sections 4(A) and 4(D) also makes it clear that the General Assembly did not subscribe to the "separate concept" notion that Section 4(A) deems only exclusively recognized representatives, and not units, as certified. Otherwise, it would not have been necessary for the legislature to specifically provide for unit determinations involving nonexclusive recognition.

To foreclose any future arguments on this issue, we note that the hearing officer's determination that Section 4(A) applies only to "the period of time extending three years after April 1, 1984" is erroneous. In order to reach such a conclusion, we would have to read the time restrictions of Section 4(A)'s first sentence into its second sentence. However, the second sentence operates independently of the first. "Subsection 4(A) [first sentence] has fixed the life expectancy of written agreements, contracts, or understandings resulting from such recognition at three years by incorporating the time limits of [R.C.] 4117.05(B). However, the time limit cuts down only the life of the contract bar defense." (Footnotes omitted.) Day, A Primer of Unit Design Under Ohio's Public Employees' Collective Bargaining Statute, supra, 11 U. Dayton L.Rev. at 226. The "contract bar" operates to prohibit all challenges to an exclusive representative who is under written contract, for a period of three years. R.C. 4117.05(B). If we were to read this time restriction into the second sentence of Section 4(A), then the result would be that for three years, a union operating under contract is protected from all challenges except from a rival union. The result would be an anomaly -- that which is given in one sentence of a statutory provision is taken away by the very next sentence.

Moyer, C.J., dissenting. I respectfully dissent. Ohio Adm. Code 4117-5-01(F) does not conflict with Am. Sub. S.B. No. 133, Section 4(A), and is therefore valid. Consequently, the State Employment Relations Board ("SERB") has final and exclusive authority to determine the composition of an exclusive bargaining unit and may exercise that power in the absence of a challenge by another employee organization.

R.C. 4117.06(A) provides that SERB "shall decide in each case the unit appropriate for the purposes of collective bargaining. The determination is final and conclusive and not appealable to the court." The intention of the General Assembly is clearly stated in the law. No right of appeal pursuant to R.C. 119.12 exists for such determinations. S. Community, Inc. v. State Emp. Relations Bd. (1988), 38 Ohio St.3d 224, 527 N.E.2d 864.

SERB promulgated Ohio Adm. Code 4117-5-01(F) to assist it in fulfilling the statutory mandate of R.C. 4117.06(A). It is well established that an administrative agency's interpretation of a statute, and regulations enacted pursuant thereto, is entitled to "considerable deference." State ex rel. Celebrezze v. Natl. Lime & Stone Co. (1994), 68 Ohio St.3d 377, 386, 627 N.E.2d 538, 545

(Resnick, J., dissenting). This court will not invalidate an administrative regulation unless it is unreasonable or in clear conflict with a statute. Youngstown Sheet & Tube Co. v. Lindley (1988), 38 Ohio St.3d 232, 234, 527 N.E.2d 828, 830, quoting Kroger Grocery & Baking Co. v. Glander (1948), 149 Ohio St. 120, 125, 36 O.O. 471, 474, 77 N.E.2d 921, 924.

Ohio Adm. Code 4117-5-01(E) allows SERB to perform its statutory duty by clarifying or amending the composition of a collective bargaining unit if it "contains a combination of employees prohibited by division (D) of Section 4117.06 of the Revised Code." R.C. 4117.06(D)(2) prohibits SERB from approving a unit that includes "any public employee employed as a guard to enforce against other employees rules to protect property of the employer or to protect the safety of persons on the employer's premises in a unit with other employees."

It is agreed that the unit in question contains such prohibited members; the sole question is the effect of Am. Sub. S.B. No. 133, Section 4(A) on the power of SERB to remedy this violation in the absence of a challenge from a rival employee organization.

The majority has concluded that Section 4(A) not only protects the status of the deemed certified employee organization, but also "grandfathers" any unit, intact, in the exact form in which it existed prior to the Act's passage. The majority asserts that the concepts of certified status and composition of a unit are so inextricably bound as to be like a wagon and its wheels. To remove any member of a unit, in other words, is tantamount to disabling the unit and changing its very nature.

This argument suffers from two faults. The first is that the concepts of certified status and unit composition are not inextricably connected. They are not akin to a wagon and its wheels but, rather, to a wagon and its contents. Removing an item from the wagon does not alter the fact that it is still a wagon.

The second fault is that the language of Section 4(A) does not support the majority's interpretation. The section states in part that "an employee organization recognized as the exclusive representative shall be deemed certified until challenged by another employee organization ***." (Emphasis added.) The Act, by its explicit language, protects only certification of the exclusive representative (in this case AFSCME), not composition of the bargaining unit. Consequently, SERB may not decertify an employee organization in the absence of a challenge by a rival employee organization. Its directive in this case did not do so. It merely removed the improper class of unit members and certified that class as an independent unit with AFSCME as the exclusive representative. The original unit and its representative thus emerged intact, and AFSCME retained its status as the exclusive representative of the newly created unit of guards. The status quo was maintained to the extent that Am. Sub. S.B. No. 133, Section 4(A) requires, and, additionally, the SERB directive brought the units into compliance with R.C. 4117.06(D). In my view, this is the logical and proper result intended by the General Assembly. For this reason, and because the trial court lacked jurisdiction to review a SERB determination of the composition of a bargaining unit, I

respectfully dissent.

Wright, J., concurs in the foregoing dissenting opinion.