[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 460.]

OHIO COUNCIL 8, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, ET AL., APPELLANTS, *v*. STATE EMPLOYMENT
RELATIONS BOARD, APPELLEE.
[Cite as *Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO v.
State Emp. Relations Bd.*, 2000-Ohio-370.]

*Public employment—Deemed certified employee representative and an employer
may resolve disputes concerning bargaining unit composition through
their collective bargaining agreement's grievance procedure.*

A deemed certified employee representative and an employer may resolve disputes
concerning bargaining unit composition through their collective bargaining
agreement's grievance procedure.

(No. 98-2433—Submitted September 22, 1999—Decided May 17, 2000.)

APPEAL from the Court of Appeals for Summit County, No. 18829.

————————————

{¶ 1} Appellants, Ohio Council 8, American Federation of State, County,
and Municipal Employees, AFL-CIO, and Local 1229 ("AFSCME"), exclusively
represent a deemed certified bargaining unit of employees at Edwin Shaw Hospital
("the Hospital") in Summit County. AFSCME is a "deemed certified"
representative because its representation of the employees within the bargaining
unit predates the passage of Ohio's Public Employees' Collective Bargaining Act.
Under the Act, such bargaining units were not required to undergo the certification
process of the State Employment Relations Board ("SERB") but were instead
"grandfathered in," as if they had undergone the SERB procedure.

{¶ 2} The collective bargaining agreement AFSCME entered into with the
Hospital in October 1987 is the relevant agreement in this case. That agreement
defined the bargaining unit and called for employees in newly created non-

supervisory positions to become part of the bargaining unit if the position was generally similar to a position already within the bargaining unit. The agreement also contained a grievance procedure that culminated in arbitration.

{¶ 3} In November 1987, the Hospital hired Floyd P. Bane as a triage technician, a newly created, non-supervisory position. The position was not included in the bargaining unit. In 1989, the Hospital appointed another triage technician, again failing to place that position in the bargaining unit. In October 1989, AFSCME filed a grievance, asserting that the position of triage technician should be included in the bargaining unit. AFSCME argued that the job was similar to those already in the bargaining unit. The grievance culminated in arbitration.

{¶ 4} The arbitrator ordered the Hospital to place the position of triage technician in the bargaining unit and that the Hospital begin making fair-share deductions from the pay of the triage technicians. Neither AFSCME nor the Hospital filed a petition for unit clarification with SERB.

{¶ 5} In October 1993, one of the technicians, Bane, filed an unfair labor practice charge with SERB. Bane alleged that AFSCME violated R.C. 4117.11(B) by employing the collective bargaining agreement's grievance procedure in its attempt to have him placed within the unit and pay "fair share" fees. SERB found probable cause existed and issued a complaint against AFSCME on May 27, 1994.

{¶ 6} On December 29, 1995, SERB issued its final opinion, holding that AFSCME's use of the arbitration process to change the bargaining unit violated R.C. 4117.11(B)(1). SERB ordered AFSCME to repay all fair share fees to the triage technicians. On January 11, 1996, AFSCME appealed SERB's ruling to the Summit County Court of Common Pleas.

{¶ 7} The common pleas court reversed SERB's order, holding that the issue of whether the triage technician position was in the bargaining unit was properly resolved through arbitration. SERB appealed that decision. On September 30, 1998, the Ninth District Court of Appeals reversed the trial court and reinstated

SERB's final order. The appellate court held that since SERB has exclusive jurisdiction over unit clarification, AFSCME committed an unfair labor practice by attempting to clarify the bargaining unit without filing a petition with SERB.

{¶ 8} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*R. Sean Grayson* and *Kimm A. Massengill*, for appellants.

*Betty D. Montgomery*, Attorney General, and *Peter M. Thomas*, Assistant Attorney General, for appellee.

_____

**PFEIFER, J.**

{¶ 9} We hold that a deemed certified employee representative and an employer may resolve disputes concerning bargaining unit composition through their collective bargaining agreement's grievance procedure.

{¶ 10} In *Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO v. Cincinnati* (1994), 69 Ohio St.3d 677, 635 N.E.2d 361, this court held that SERB did not have jurisdiction to adjust or alter deemed certified collective bargaining units unless exclusive representation is challenged by another employee organization. In so ruling, this court invalidated Ohio Adm.Code 4117-5-01(F), finding it to be in clear conflict with Section 4(A) of Am.Sub.S.B. No. 133 (140 Ohio Laws, Part I, 336, 367).

{¶ 11} This court revisited its *Cincinnati* decision in *State ex rel. Brecksville Edn. Assn., OEA/NEA v. State Emp. Relations Bd.* (1996), 74 Ohio St.3d 665, 660 N.E.2d 1199. In *Brecksville* we found an exception to SERB's lack of jurisdiction regarding the composition of deemed certified bargaining units. This court held that our decision concerning Section 4(A) of Am.Sub.S.B. No. 133 "does not deprive the State Employment Relations Board of jurisdiction to consider a petition jointly filed by an employer and an exclusive bargaining representative requesting

SERB to amend the composition of a deemed certified bargaining unit." *Id.* at syllabus.

{¶ 12} However, the *Brecksville* decision was less about expanding the jurisdiction of SERB than it was about allowing parties to a collective bargaining agreement to achieve bilaterally an agreement on the composition of bargaining units. We noted in *Brecksville* that deemed certified bargaining units should not remain frozen at the status quo that existed at the time of the passage of the collective bargaining law in 1983. We approved of the evolution of the composition of the bargaining unit through the initiation of a *joint* petition with SERB. *Id.* at 670-671, 660 N.E.2d at 1203-1204.

{¶ 13} We set forth in *Brecksville* the philosophical underpinnings of joint petitions, which we felt were harmonious with the collective bargaining law. For one, those petitions are "fully consistent with the acknowledged legislative objectives of orderly and cooperative resolution of disputes, and with the policy interest of stability in labor relationships." *Id.* at 671, 660 N.E.2d at 1203.

{¶ 14} We also considered how employers and unions could adapt and evolve without some ability to themselves address the composition of the bargaining unit. We reasoned:

"[I]f this court were to find no jurisdiction for SERB to consider the joint petition, such holding would impose an unworkable and unrealistic requirement that the employee unit composition be forever frozen in time unless and until an adversarial position is taken by a third-party employee representative; that the decision would promote confrontation rather than the cooperation encouraged by the statute; and that such a rule would present an impediment to the flexibility that complex collective bargaining requires." *Id.* at 671, 660 N.E.2d at 1203-1204.

{¶ 15} We further wrote that the General Assembly "did not intend unified parties to forgo that course of action which they judge to be desirable and efficacious for all concerned, simply because it is not the solution agreed upon prior

4

to October 6, 1983, and because no rival organization has challenged the exclusive representative." *Id.* at 671, 660 N.E.2d at 1204.

{¶ 16} We continue to encourage the cooperative resolution of disputes, including those regarding the composition of bargaining units. We note that our *Brecksville* holding offered only one measure of how an employer and union can resolve a dispute regarding the composition of a bargaining unit. Our holding in *Brecksville* did not vest exclusive jurisdiction in SERB to determine bargaining units. As we stated, Section 4(A) of Am.Sub.S.B. No. 133 does not deprive SERB jurisdiction to consider a joint petition. But it certainly does not give SERB exclusive jurisdiction.

{¶ 17} The Public Employees' Collective Bargaining Act acknowledges that certain employers and bargaining groups have long histories, predating the Act, of resolving differences through collective bargaining and through dispute resolution mechanisms such as arbitration. The Act recognizes that those relationships need not be disturbed. Our decisions in *Cincinnati* and *Brecksville* are consistent with the idea that parties with historic relationships should be allowed to agree between themselves about the makeup of bargaining units, or to choose the best method of resolving differences in that regard.

{¶ 18} The employer and union in this case governed their relationship through a collective bargaining agreement. That agreement spoke to the issue of the make-up of the bargaining unit, and amendments thereto. By the terms of Section 4, Article I of the operative collective bargaining agreement in this case:

"Employees in all newly created non-supervisory job classifications in any department shall become part of the appropriate bargaining unit and covered by the terms and provisions of this Agreement, provided the duties of such classification are generally similar to any classification included within the bargaining unit. The Hospital will notify the Union within ten (10) days of any newly-created classification that is similar to a bargaining unit position."

**{¶ 19}** Thus, the collective bargaining agreement addressed additions to the bargaining unit, and required that new classifications similar to existing ones be added to the bargaining unit.  A perceived violation of the collective bargaining agreement resulted in the initiation of the grievance procedure agreed to in the collective bargaining agreement, culminating in arbitration.  The arbitrator resolved the dispute.

**{¶ 20}** The resolution of the unit composition issue in this case fits well within our *Cincinnati* and *Brecksville* decisions.  We recognize that a collective bargaining agreement's grievance procedure is another way for employers and employee representatives to resolve bargaining unit composition issues.  We recognized in *Cincinnati* that SERB does not have exclusive jurisdiction to resolve such issues; we recognized in *Brecksville* that SERB could have jurisdiction pursuant to a joint petition by the parties; and we recognize here that a collective bargaining agreement's grievance procedure is another way for parties to resolve those differences.

**{¶ 21}** Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

**{¶ 22}** The majority concludes that "a collective bargaining agreement's grievance procedure is *another way* for employers and employee representatives to resolve bargaining unit composition issues." (Emphasis added.)  I respectfully dissent, because I believe that the majority's holding conflicts with our rule that "SERB has *exclusive jurisdiction* to decide matters committed to it pursuant to R.C. Chapter 4117." (Emphasis added.)  *Franklin Cty. Law Enforcement Assn. v.*

*Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 170, 572 N.E.2d 87, 90.

{¶ 23} The majority contends that its recognition of the arbitration procedure here "fits well" within our continuum of cases addressing the composition of deemed certified units. But in 1992, this court expressly adopted the Ninth Appellate District's conclusion that "SERB is the exclusive channel through which the existing employee bargaining unit may be changed. * * * [T]he structure of a bargaining unit may be altered only by SERB." *Harrison v. Judge* (1992), 63 Ohio St.3d 766, 770, 591 N.E.2d 704, 707.[1]

{¶ 24} AFSCME and the majority rely upon the fact that in 1994, in *Cincinnati*, this court decided that Am.Sub.S.B. No. 133 invalidated the administrative rule that had permitted SERB to entertain petitions *from the employer* to adjust or alter deemed certified units. *Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO v. Cincinnati* (1994), 69 Ohio St.3d 677, 635 N.E.2d 361. But *Cincinnati*'s limitation on SERB's jurisdiction was itself expressly confined to its facts by our *Brecksville* decision in 1996. In *Brecksville*, we held that Am.Sub.S.B. No. 133 does *not* deprive SERB of jurisdiction to consider jointly filed petitions requesting amendments of deemed certified bargaining units. *State ex rel. Brecksville Edn. Assn., OEA/NEA v. State Emp. Relations Bd.* (1996), 74 Ohio St.3d 665, 660 N.E.2d 1199, syllabus. *Brecksville*, like *Harrison*, thus *recognized* SERB jurisdiction over petitions affecting the composition of deemed certified units.

---

1. AFSCME claims that *Harrison* is inapplicable, arguing that the case before us does not concern a *change* in unit composition. AFSCME claims that it merely sought to *clarify* whether the existing unit contained technical employees such as the triage technicians here. The arbitrator in this case ordered the Hospital to include a newly created position in the pre-existing bargaining unit. However, the majority does not decide whether this action was more akin to an "amendment" defined in Ohio Adm.Code 4117-5-01(E)(1) or a "clarification" defined in Ohio Adm.Code 4117-5-01(E)(2).

**{¶ 25}** Finally, in 1996, this court cited *Harrison* with approval—reinforcing the conclusion that despite the breadth of its syllabus, *Cincinnati* is no more than a carefully limited exception to *Harrison*'s general rule that SERB has exclusive jurisdiction over issues concerning the "structure" of a bargaining unit. *State ex rel. Gabriel v. Youngstown* (1996), 75 Ohio St.3d 618, 621, 665 N.E.2d 209, 211.

**{¶ 26}** The majority argues that even if Am.Sub.S.B. No. 133 did not *deprive* SERB of jurisdiction to consider a joint petition, "it certainly does not give SERB exclusive jurisdiction." But once SERB *has* jurisdiction over issues affecting the composition of deemed certified units, that should be the end of the matter. For we have previously held that "SERB has *exclusive jurisdiction* to decide matters committed to it pursuant to R.C. Chapter 4117." (Emphasis added.) *Law Enforcement Assn., supra,* 59 Ohio St.3d at 170, 572 N.E.2d at 90.

**{¶ 27}** AFSCME insists that deemed certified units are a special case, due to the historical relationship between the parties. It contends that SERB should not have exclusive jurisdiction to entertain unilateral petitions to amend or clarify such units, and that SERB itself has declined to act on unilateral petitions filed by unions or employers in the past. Regardless, this court has held that deemed certified units are "treated as if they had been certified normally." *Brecksville, supra,* 74 Ohio St.3d at 666, 660 N.E.2d at 1200, fn. 1.

**{¶ 28}** The parties in this case, the administrative rules, and the court of appeals below all carefully distinguish between the *amendment* of deemed certified units and the *clarification* of deemed certified units. See footnote 1, *supra*. The majority's opinion and syllabus, however, do not address this potentially meaningful distinction. Instead, the syllabus permits the grievance procedure to resolve *any* "disputes concerning bargaining unit *composition*." (Emphasis added.) Because this could, in future cases, allow unions and employers to prevent SERB

from fulfilling its statutory mandate to determine "the unit appropriate for purposes of collective bargaining," R.C. 4117.06(A), I respectfully dissent.

_____