**SHAWNEE EDUCATION ASSOCIATION, Appellee and Cross–Appellant,**

v.

**STATE EMPLOYMENT RELATIONS BOARD**
**et al., Appellant and Cross–Appellees.**

[Cite as *Shawnee Edn. Assn. v. State Emp. Relations Bd.* (2000), 139 Ohio App.3d 381.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 99AP–1210 and 99AP–1211.

Decided Nov. 16, 2000.

382

*Cloppert, Portman, Sauter, Latanick* and *Brenda J. Redmond,* for appellee and cross-appellant.

*Betty D. Montgomery,* Attorney General, and *Dennis R. Morgan,* Assistant Attorney General for appellant and cross-appellee State Employment Relations Board.

*Schottenstein, Zox & Dunn, Susan Porter* and *Dan Srsic,* for appellant and cross-appellee Shawnee State University.

GREY, Judge.

The State Employment Relations Board ("SERB") and Shawnee State University ("University"), appellants, appeal from a judgment of the Franklin County Court of Common Pleas reversing in part and affirming in part SERB's directive that all department chairpersons should be excluded from the bargaining unit represented by Shawnee Education Association ("SEA"), appellee. The court of common pleas held that the Allied Health chairpersons should not be included in the bargaining unit, but the chairpersons in the Arts & Sciences and the Business and Engineering Technologies departments must be included. This appeal also involves a cross-appeal by SEA questioning SERB's jurisdiction to entertain the University's unilateral petition for unit clarification. In effect, SEA asks this court to find that the court of common pleas erred in holding that SERB had jurisdiction to hear the University's unilateral petition for unit clarification. Alternatively, if this court finds that SERB had jurisdiction to hear the petition in question, SEA asks that we affirm the trial court's holding to the extent that it reversed SERB's decision that the chairpersons from the departments of Arts and Sciences and Business and Engineering Technologies are excluded from the deemed certified collective bargaining unit.

On March 18, 1994, the University filed a petition with SERB for clarification of an existing bargaining unit as permitted under Ohio Adm.Code 4117–5–01(E). Relying on Ohio Adm.Code 4117–5–01(F), SERB granted a motion dismissing the

case. The University appealed SERB's dismissal to the Franklin County Court of Common Pleas. On August 29, 1995, the trial court rendered its decision concluding that SERB erred in dismissing the University's petition to the extent it relied on Ohio Adm.Code 4117–5–01(F), because the Ohio Supreme Court had, in the interim, declared the rule invalid. In *Ohio Council 8, AFSCME, AFL–CIO v. Cincinnati* (1994), 69 Ohio St.3d 677, 684, 635 N.E.2d 361, 365–366, the Ohio Supreme Court held that "Ohio Adm.Code 4117–5–01(F) is in clear conflict with Section 4(A) of Am.Sub.S.B. No. 133 and is, therefore, invalid." However, the trial court concluded that SERB nonetheless had properly dismissed the petition because Section 4(A) of Am.Sub.S.B. No. 133 "forbids adjustments or alterations to deemed-certified collective bargaining units absent a challenge by and subsequent certification of a rival employee organization." *Shawnee State Univ. v. State Emp. Relations Bd.* (Aug. 29, 1995), Franklin C.P. No. 94CVF07–4709, unreported, at 4.

The University appealed to this court. On March 21, 1996, this court reversed and remanded to SERB so that it could develop the necessary facts in order for the court to properly determine SERB's jurisdiction over the University's petition for clarification under Section 4(A). See *Shawnee State Univ. v. State Emp. Relations Bd.* (1996), 110 Ohio App.3d 1, 673 N.E.2d 600. On June 30, 1997, SERB issued an order and directive, where it found that it did have jurisdiction to entertain the University's petition for clarification of the bargaining unit. SERB concluded that the position of department chairperson should be excluded from the collective bargaining unit at the University.

SEA appealed to the Franklin County Court of Common Pleas. On September 27, 1999, the trial court issued its decision, affirming in part and reversing in part SERB's Order and Directive. Both the University and SERB filed timely appeals. SEA filed a cross-appeal. Additionally, the University filed a motion to stay the trial court's judgment pending the appeal. Said motion was granted on November 10, 1999.

SERB appeals, assigning the following assignment of error:

"The lower court abused its discretion by failing to accord due deference to the State Employment Relations Board's order finding that the chairpersons in the arts and sciences (math/science and humanities) and the business and engineering technologies departments must be excluded from the bargaining unit represented by the Shawnee Education Association since the order was supported by substantial evidence on the record as a whole and was in accordance with law."

The University also appeals, assigning the following assignments of error:

"A. The court of common pleas erred in reviewing and reversing, in part, SERB's determination that no department chairpersons are members of the unit

for the purpose of collective bargaining because the court had no jurisdiction over that issue.

"B. The court of common pleas erred in failing to affirm SERB's determination that no department chairpersons are members of the bargaining unit."

SEA appeals, asserting the following assignment of error:

"Pursuant to Ohio law, the common pleas court erred in holding that SERB had jurisdiction to hear the university's petition for unit clarification. [Or, in the alternative, that 'SERB erred in holding that department chairpersons at Shawnee State University do not belong in the University's deemed certified collective bargaining unit.' (Appellee's brief, at 6.)]"

The above assignments of error are interrelated and can be summarized as follows: First, we must address the jurisdictional question, namely, whether SERB has jurisdiction to entertain a unilateral petition for clarification of the composition of a collective bargaining unit. Second, we must consider whether the court of common pleas has jurisdiction to review SERB's findings as to the composition of a collective bargaining unit and the amount of deference a trial court is required to give to SERB. And finally, we will decide whether SERB or the court of common pleas erred in their respective holdings.

■ SEA argues that the lower court erred in holding that SERB had jurisdiction to entertain the University's unilateral petition to clarify a deemed certified collective bargaining unit. SEA argues that SERB's decision violates two recent rulings by the Ohio Supreme Court.

In *Cincinnati*, the Ohio Supreme Court held that "Ohio Adm.Code 4117–5–01(F) is in clear conflict with Section 4(A) of Am.Sub.S.B. No. 133 and is, therefore, invalid. Whereas Ohio Adm.Code 4117–5–01(F) authorizes adjustments or alterations to deemed certified collective bargaining units absent a challenge by and subsequent certification of a rival employee organization, Section 4(A) forbids it. Thus, SERB was without jurisdiction to hear the city's petitions." (Footnote omitted.) *Id.*, 69 Ohio St.3d at 684, 635 N.E.2d at 365–366. *Cincinnati* involved a request by the city-employer that nine employees classified as waterworks guards be excluded from the bargaining unit. The city's contention was that their inclusion in the bargaining unit was prohibited by R.C. 4117.06(D)(2).

Two years later, the Ohio Supreme Court decided *State ex rel. Brecksville Edn. Assn., OEA/NEA v. State Emp. Relations Bd.* (1996), 74 Ohio St.3d 665, 660 N.E.2d 1199. *Brecksville* involved a joint petition for amended certification of a bargaining unit. In *Brecksville,* the court distinguished *Cincinnati* and limited its holding to unilateral employer petitions and confined its holding to those particular facts. *Id.* at 669, 660 N.E.2d at 1202–1203. The court further noted

that, while "it is reasonable to conclude * * * that the General Assembly intended to protect preexisting collective bargaining relationships from unilateral attack by employers, it does not necessarily follow that the General Assembly intended to forever freeze the composition of units extant on October 6, 1983." *Id.* at 670, 660 N.E.2d at 1203. Accordingly, the court concluded that "SERB has jurisdiction to consider petition jointly filed by employer and exclusive representative requesting SERB to amend composition of deemed certified collective bargaining unit."

In its most recent decision, the Ohio Supreme Court revisited its holdings in the above two cases. See *Ohio Council 8, AFSCME, AFL–CIO v. State Emp. Relations Bd.* (2000), 88 Ohio St.3d 460, 727 N.E.2d 912. The court noted that, in *Cincinnati*, "this court held that SERB did not have jurisdiction to *adjust* or *alter* deemed certified collective bargaining units unless exclusive representation is challenged by another employee organization." (Emphasis added.) *Id.* at 462, 727 N.E.2d at 914. As to its holding in *Brecksville*, the court noted that "[i]n *Brecksville* we found an exception to SERB's lack of jurisdiction regarding the composition of deemed certified bargaining units." *Id.* The exception was that SERB may entertain a "joint" petition to effect a change to the deemed certified collective bargaining unit. The court went on to note that "our *Brecksville* holding offered only one measure of how an employer and union can resolve a dispute regarding the composition of a bargaining unit." *Id.* at 463, 727 N.E.2d at 914.

Prior to the above two cases, the Supreme Court had spoken to the questions of jurisdiction and the applicable standards of review. In *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264, 267, the court noted that reviewing courts must afford due deference to SERB's interpretation of R.C. Chapter 4117. "It was clearly the intention of the General Assembly to vest SERB with broad authority to administer and enforce R.C. Chapter 4117." *Id.* R.C. 4117.13(D) provides that "[t]he findings of the board as to the facts, if supported by substantial evidence on the record as a whole, are conclusive."

With regard to the deference due SERB, the *Lorain* court further noted:

"Otherwise, there would be no purpose in creating a specialized administrative agency, such as SERB, to make determinations. The General Assembly could have provided for a direct appeal of a hearing officer's decision to a court of common pleas, but such a course would have obviated the purpose for which SERB was established. To allow courts such latitude would invite many conflicting interpretations of R.C. 4117.08 and other provisions in the Act by various courts throughout Ohio." *Id.* at 260, 533 N.E.2d at 267.

In *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 151, 545 N.E.2d 1260, 1265–1266, the Ohio Supreme Court further stated that SERB's decision is "the product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies and responsible treatment of the facts. It is the type of judgment which administrative agencies are best equipped to make and for which the administrative process is most appropriate. See *Republic Aviation Corp. v. Natl. Labor Relations Bd.* (1945), 324 U.S. 793, 800 [65 S.Ct. 982, 986, 89 L.Ed. 1372, 1377–1378]. It is a judgment we should not disturb."

It is, therefore, apparent that the Ohio Supreme Court recognizes SERB as the agency charged with administering, interpreting, and enforcing R.C. Chapter 4117.

The Ohio Supreme Court has also addressed the standard of review a trial court must utilize in reviewing a SERB decision. It stated that "the standard of review of a SERB decision on an unfair labor practice charge is whether there is substantial evidence to support that decision." *Lorain City School Dist. Bd. of Edn.*, 40 Ohio St.3d at 260, 533 N.E.2d at 266.

As to the standard of review an appellate court must utilize in reviewing a SERB order, the *Lorain* court emphasized that it is a more limited role than that of a trial court. "The appellate court is to determine only if the trial court has abused its discretion." *Id.* at 261, 533 N.E.2d at 267. If no abuse of discretion has occurred, then an appellate court must affirm the lower court's decision.

Thus, our role here is to determine, as a threshold matter, whether SERB properly exercised its jurisdiction to hear the University's petition. Then we must determine whether there is substantial evidence in the record to support SERB's decision and whether the trial court abused its discretion.

We agree with the court below that SERB has jurisdiction to entertain a petition for clarification of the composition of a deemed certified collective bargaining unit. Neither *Cincinnati* nor *Brecksville* precludes SERB from ruling on the University's unilateral petition for clarification. Neither case dealt with a unilateral petition to *clarify* a deemed certified unit. In *Cincinnati*, the city unilaterally sought to remove certain positions from the deemed certified unit. *Brecksville*, on the other hand, dealt with a joint petition to amend a deemed certified unit. Hence, both involved changes or alterations to the unit, which should be distinguished from a petition for clarification.

In the case at bar, the University sought to clarify the composition of a deemed certified unit. Under Ohio Adm.Code 4117–5–01(E)(2), clarification is "to determine whether a particular employee or group of employees is included or

excluded from the unit based upon the existing unit description and the duties of the employees in question." Further, R.C. 4117.06 gives SERB exclusive jurisdiction to decide the unit "appropriate for the purposes of collective bargaining."

Therefore, we hold that SERB has jurisdiction to entertain the University's petition in this case. Accordingly, SEA's assignment of error is overruled.

We now move to the merits of the parties' dispute. The primary dispute here has been whether the chairpersons in the Arts and Sciences, and Business and Engineering Technologies departments are substantially similar to the old program directors or the old divisional coordinators. The University argued below, and SERB found, that the department chairperson position is substantially similar to the old program director position and should be excluded from the bargaining unit represented by SEA. Whereas, SEA argued, and the trial court found, that the chairperson position is substantially similar to the old divisional coordinator position and, therefore, must be included in the bargaining unit.

The University and SEA have had a history of collective bargaining predating the passage of the Collective Bargaining Act of 1984. Therefore, pursuant to Section 4(A) of Am.Sub.S.B. No. 133, the collective bargaining unit, in existence at the time the Act was enacted, is the deemed certified bargaining unit. The bargaining unit at the center of the dispute in this case was defined by the 1983–1985 collective bargaining agreement as follows:

"The bargaining unit shall include all full time contractual faculty members who teach for the college including those members designated as Program Coordinators or Division Coordinators but excluding Program Directors." *Shawnee Edn. Assn. v. State Emp. Relations Bd.* (Sept. 23, 1999), Franklin C.P. No. 97CVF07–6875, unreported, at 5.

In 1984, Shawnee State was a community college. The college offered degrees in Arts and Sciences, and in Technical Programs. In the Allied Health portion of the Technical Programs area, there were seven program directors and two divisional coordinators. In the Arts and Sciences area, there were two divisional coordinators. As stated above, in 1984, the program directors were excluded from the collective bargaining unit but the divisional coordinators were included. In 1986, Shawnee State became a public university. Thereafter, the position of department chairperson was created and both the program director and divisional coordinator positions were eliminated.

In the 1987–1990 collective bargaining agreement, the unit was defined to "include all full time contractual faculty members who teach for the Employer, excluding Program Directors and Division Chairs." *Id.* at 6. Then in the 1990–1993 agreement, department chairs were included after commencement in 1992. Apparently, the University agreed to this only to ensure an end to a strike.

Finally, the 1994–1997 agreement continued to include the department chairpersons but acknowledged that the University has filed a petition for clarification with SERB. The petition was filed in 1994.

Thus, the task for SERB was to determine whether the duties performed by those occupying the position of chairperson at the time the petition was filed, 1994, were substantially similar to the duties performed by the division coordinators in 1984. If so, then those positions must be included in the deemed certified bargaining unit. On the other hand, if chairpersons in 1994 were performing duties substantially similar to those performed by the program directors in 1984, then such positions must be excluded from the deemed certified bargaining unit.

■ First, with regard to department chairs in the Allied Health area in 1994, the record reflects that their duties were substantially similar to those of program directors in 1984. The program directors were excluded from the deemed certified bargaining unit in 1984. Accordingly, the hearing officer recommended that they be excluded from the unit. SERB followed this recommendation and the trial court upheld SERB's determination.

Because we find that SERB's decision was supported by substantial evidence, the trial court did not err in upholding it. The trial court's finding as to department chairpersons in the Allied Health area is affirmed.

■ Now we will consider the evidence with regard to the department chairs in the Arts and Sciences, and Technical programs. The evidence presented was primarily the testimony of four individuals: Dave Todd; Shannon Kiser; Tom Carnavale; and Dr. James Kadel.

Todd served as a divisional coordinator and subsequently as a department chairperson. He testified that his daily duties did not change after the title changed from coordinator to department chair in 1987. He indicated that his responsibilities were practically the same, albeit increased ·in volume, between 1980, when he assumed the position of divisional coordinator, and 1989, when he stepped down as department chairperson.

Kiser also served as a divisional coordinator for an extended period of time. He testified as to the responsibilities of the coordinator. The record reflects that his description of the coordinator's duties is consistent with the testimony of Todd. While Kiser never held the position of department chair, he worked closely with Dr. Holt, the department chair in 1994 at the time of the filing of the petition. According to Kiser's testimony, Dr. Holt's duties as a department chair are substantially similar to those performed by him as divisional coordinator.

Carnavale held the position of department chair in 1994. He testified as to the duties of the department chairperson. His description of the duties performed

by the department chair is consistent with the description of those duties performed by the coordinators as described by both Todd and Kiser above.

Dr. Kadel's testimony was the only evidence put on by the University in an effort to rebut the testimonies of both Todd and Kiser. The record reflects that Dr. Kadel never had any experience performing the duties of the coordinator, or supervising coordinators in the Arts and Sciences department. Dr. Kadel's experience was primarily in the Allied Health area. The trial court noted that even Dr. Kadel's testimony regarding the job description of the department chair was not substantially different from the testimony of those who had held the position of coordinator as to their duties. The main differences were that department chairs now have a twelve-month contract and directly evaluate faculty members. This is in contrast to the coordinators who had a nine-month contract and indirectly evaluated faculty members.

The trial court is of the opinion that "the Hearing Officer was in a far better position to evaluate the credibility and bias of the witnesses than was SERB." *Shawnee Edn. Assn.* at 9. The court also concluded, "the weight of the evidence is that the duties performed in 1994 were more like the position of Divisional Coordinator than that of Program Director." *Id.* We agree.

We find that, based on the record, the trial court did not abuse its discretion in reversing in part and affirming in part SERB's findings. The trial court was correct in holding that SERB's finding, that department chairs in the Arts and Sciences and in the Technical Program should be excluded from the deemed certified collective bargaining unit, was not supported by substantial evidence.

Therefore, SERB's assignment of error and the University's first assignment of error are overruled.

█ Finally, we address the trial court's jurisdiction to review SERB's findings as to the composition of the collective bargaining unit. R.C. 119.12 states, in relevant part, "any party adversely affected by any order of an agency * * * may appeal to the court of common pleas of Franklin county." The Ohio Supreme Court has recognized that SERB is an "agency whose adjudications are made subject to judicial review pursuant to R.C. 119.12, specifically by R.C. 4117.02(M)." *South Community, Inc. v. State Emp. Relations Bd.* (1988), 38 Ohio St.3d 224, 527 N.E.2d 864. R.C. 4117.02(M) states that "the board is subject to Chapter 119. of the Revised Code."

The University argues, however, that R.C. 4117.02 provides for review of SERB decisions only when an appeal is not explicitly prohibited. More precisely, the University argues that R.C. 4117.06(A) prohibits such appeals. We disagree.

R.C. 4117.06(A) states:

"The state employment relations board shall decide in each case the unit appropriate for the purposes of collective bargaining. The determination is final and conclusive and not appealable to the court."

As is clear from its text, this section deals with designating or certifying the appropriate unit for the purpose of collective bargaining. We are not dealing with unit designation in this case. The collective bargaining unit has been deemed certified because it existed prior to the passage of the Act. Unit designation or certification is not at issue in this case.

Therefore, we find that the common pleas court has jurisdiction to review SERB's decision in this case. Accordingly, the University's second assignment of error is overruled.

All of the assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and BROWN, JJ., concur.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.